**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

WADE F. EXUM, M.D.,

    Plaintiff - Counter-Defendant - Appellant - Cross-Appellee,

v.

UNITED STATES OLYMPIC COMMITTEE, a corporation,

    Defendant - Counter-Claimant - Appellee - Cross-Appellant,

and

UNITED STATES ANTI-DOPING AGENCY, a not for profit Colorado corporation,

    Defendant.

Nos. 03-1256, 03-1280

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. Nos. 00-N-1421 and 00-RB-1421 (PAC))**

---

John W. McKendree, Law Offices of John W. McKendree, Denver, Colorado, for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee.

William A. Wright, Sherman & Howard, L.L.C., Denver, Colorado (Raymond M. Deeny, Sherman & Howard, L.L.C., Colorado Springs, Colorado, with him on the brief) for Defendant-Counter-Claimant-Appellee-Cross-Appellant.

Before **EBEL**, **KELLY** and **McCONNELL**, Circuit Judges.

**EBEL**, Circuit Judge.

Wade Exum, former Director of Drug Control Administration for the United States Olympic Committee ("USOC"), alleges that he was discriminated against in the terms and conditions of his employment because of his race. In particular, he claims that he was constructively discharged and denied various promotions and appointments because he is African-American, in violation of 42 U.S.C. § 1981. He also brings several state law claims against the USOC.

The district court granted summary judgment in favor of the USOC as to all of Plaintiff's § 1981 race discrimination claims. It consequently declined to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismissed those claims without prejudice. We AFFIRM.

## BACKGROUND

The USOC hired Plaintiff as its Director of Drug Control Administration in 1991. During his tenure at the USOC, Plaintiff's relationship with USOC management was less than harmonious. Plaintiff complains that, although he was responsible for any failures in doping control, he was not given adequate authority to solve drug use problems in amateur sports. Plaintiff accuses the

USOC of "encouraging and covering up or ignoring doping by Olympic athletes," and asserts that his anti-doping efforts put him "in an inherent conflict with the rest of the USOC." He also acknowledges that "[t]hroughout his employment with the USOC, [he] was criticized for not being a 'team player.'"

Plaintiff, who is African-American, held the title of Director of Drug Control Administration throughout his employment at the USOC. During that time, some other USOC employees were promoted. For example, Scott Blackmun, who is white, was appointed Senior Managing Director of Sport Resources in 2000.

According to Plaintiff, he had been promised that the USOC would create a position called Chief Medical Officer and give him that job, but the USOC did not actually create such a position. Additionally, when the United States Anti-Doping Agency ("USADA") was established in 2000, USOC officials did not submit Plaintiff's name to that organization for consideration for the position of USADA's Chief Executive Officer.

Plaintiff's conflict with his superiors at the USOC reached its crescendo when Plaintiff's supervisor ordered him to turn over certain medical records to the newly-established USADA. Plaintiff refused to follow that order. He explains that he believes that doing so would have violated his duty to keep medical records confidential. According to Plaintiff, his supervisor then called

him insubordinate, repeated his order, and stated that Plaintiff "could leave the USOC 'sooner rather than later.'" Plaintiff claims that this encounter caused him a great deal of stress, and that a psychologist told him that he ought to resign for the sake of his physical and emotional well-being.

Plaintiff tendered his resignation on June 5, 2000. In his letter, he stated that he was resigning "under duress and protest" because of the "USOC's actions at encouraging doping activities among athletes, as well as its hostile attitude towards racial minorities."

On the next day, the USOC responded with a letter suggesting alternatives to resignation and stating that it was willing to investigate Plaintiff's allegations if he replied by June 9. Otherwise, the USOC would accept Plaintiff's resignation on that date. Plaintiff did write back on June 9, but was not particularly receptive to the options proposed by the USOC. Plaintiff refused to participate in any investigation, and stated that "[m]y resignation, contrary to your interpretation, was not seeking your acceptance." Plaintiff has testified that he was represented by counsel with respect to his various disputes with the USOC since about October 1999.

In the instant action, Plaintiff's only federal claims against the USOC alleged various instances of racial discrimination in violation of 42 U.S.C.

§ 1981. He also brought several state law claims against the USOC.[1] In turn, the USOC brought several state law counterclaims against Plaintiff.[2]

The district court granted summary judgment in favor of the USOC as to Plaintiff's § 1981 claims. It then declined to take supplemental jurisdiction over Plaintiff's state law claims or the USOC's counterclaims, and dismissed each of those claims without prejudice. We AFFIRM.[3]

## DISCUSSION

On appeal, Plaintiff raises several distinct allegations of discriminatory employment action. Specifically, Plaintiff claims (1) that he was constructively discharged, (2) that he was not promoted to the position of Chief Medical Officer, (3) that he was not promoted to the position of Senior Managing Director of Sport Resources, and (4) that the USOC did not submit his name to the USADA as a

---

[1] Plaintiff's state law claims were based upon false light invasion of privacy, fraud and misrepresentation, breach of contract, promissory estoppel, wrongful termination in violation of public policy, and tortious interference with prospective financial advantage. Plaintiff has abandoned his false light invasion of privacy claim.

[2] The USOC asserts that, after Plaintiff resigned, he retained certain confidential documents. The USOC's state law counterclaims include allegations of civil theft and breach of the duty of loyalty.

[3] Plaintiff also brought a § 1981 discrimination claim against the USADA. The district court granted summary judgment in favor of the USADA, and the parties to that dispute subsequently settled. Accordingly, that claim is not before us on appeal.

candidate for that organization's Chief Executive Officer position. He further

asserts that each of these adverse employment actions was motivated by his race.[4]

A. Introduction

Section 1981 forbids all intentional racial discrimination in the making or

enforcement of private or public contracts. See Saint Francis Coll. v. Al-

Khazraji, 481 U.S. 604, 609 (1987); McDonald v. Santa Fe Trail Transp. Co., 427

U.S. 273, 295 (1976); Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d

1257, 1262 (10th Cir. 1995). In particular, § 1981 protects employees from racial

discrimination both in entering into an employment contract and in enjoying the

---

[4] Plaintiff raised a number of other issues before the district court. He argued unsuccessfully that his compensation and certain other benefits were discriminatory and that he was not promoted to the position of Senior Director of Sport Services on account of his race.

Plaintiff did not mention these issues anywhere in the argument section of his brief on appeal. They have therefore been waived. The Federal Rules of Appellate Procedure require appellants to provide, under an appropriate heading, an argument containing "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9). Scattered statements in the appellant's brief are not enough to preserve an issue for appeal. See Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). Appellees are not expected to respond to every grievance that may be alluded to in the appellant's statement of facts. Cf. Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000) (considering waived issues robs the appellee of the opportunity to respond).

benefits, privileges, terms and conditions of employment. <u>Harris v. Allstate Ins. Co.</u>, 300 F.3d 1183, 1186-87 (10th Cir. 2002).[5]

Having no direct evidence of intentional racial discrimination, Plaintiff relies upon circumstantial inference. Section 1981 plaintiffs may prove discrimination circumstantially under the familiar burden-shifting framework outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>English v. Colo. Dep't of Corr.</u>, 248 F.3d 1002, 1007-08 (10th Cir. 2001).

Under that framework, the plaintiff has the initial burden of presenting a prima facia case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802. As a general matter in a failure to hire, failure to promote or a discharge case, a prima facie case of employment discrimination consists of a showing that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others (e.g., the position at issue remained open after the adverse employment action). <u>See</u> <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1229 (10th Cir. 2000);

---

[5] Section 1981(a) reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" includes enjoying all of the benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

see also Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998).[6] A prima facie case raises an inference of discrimination by eliminating the most common nondiscriminatory reasons for the defendant's conduct. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.") (quotation omitted).

Next, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to produce some nondiscriminatory reason for its behavior. McDonnell Douglas, 411 U.S. at 802. Finally, if the defendant satisfies its production burden, the plaintiff must show that the reasons proffered by the defendant are pretextual. Id. at 804. "A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002) (quotation and alteration omitted). A showing that the employer's justifications for its behavior are pretextual permits a finding of intentional discrimination, but does not compel it.

---

[6] The precise articulation of what is required to establish a prima facie case may vary somewhat depending on the context of the plaintiff's claim. See McDonnell Douglas, 411 U.S. at 802 n.13; Kendrick, 220 F.3d at 1227.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000); St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Summary judgment is appropriate when there is no material factual dispute

that a factfinder could reasonably resolve in favor of either party. See Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Accordingly, with respect to

each of Plaintiff's § 1981 claims, we look to whether the evidence in the record

would have permitted an inference of intentional race discrimination under the

McDonnell Douglas framework. We turn now to that analysis.

### B. Constructive Discharge

First we address Plaintiff's argument that he was constructively discharged

due to his race. We have no difficulty concluding that Plaintiff failed to present

evidence sufficient to raise a genuine issue that he suffered a constructive

discharge. Because he failed to demonstrate any adverse employment action, he

consequently failed to establish a prima facie case as to this claim.

A constructive discharge occurs when an employer, through unlawful acts,

makes working conditions so intolerable that a reasonable person in the

employee's position would feel forced to resign. Pennsylvania State Police v.

Suders, 124 S. Ct. 2342, 2351 (2004); Sprague v. Thorn Americas, Inc., 129 F.3d

1355, 1367 (10th Cir. 1997). Working conditions must be so severe that the

plaintiff simply had no choice but to quit. Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir. 2000); Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1357 (10th Cir. 1997). In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged.

"The question is not whether working conditions at the facility were difficult or unpleasant." Yearous, 128 F.3d at 1357; see also Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003) ("It is not enough that a plaintiff suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world.") (quotation omitted). Rather, Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship. Yearous, 128 F.3d at 1357. We have previously held that even requiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary. See Lighton, 209 F.3d at 1222; Parker v. Bd. of Regents of Tulsa Junior Coll., 981 F.2d 1159, 1162 (10th Cir. 1992). We judge the voluntariness of an employee's resignation under an objective standard, looking to whether his

or her working conditions were so intolerable that a reasonable employee would have had no other choice but to quit.  Yearous, 128 F.3d at 1356.[7]

In the instant case, Plaintiff argues that he was constructively discharged because he was given an unethical order and because he was subjected to racial harassment and hostility.[8]  We hold that the record does not come close to demonstrating that Plaintiff's resignation was objectively involuntary.

Instead of resigning, Plaintiff could have chosen to comply with his superior's order or, alternatively, refused to comply and faced the possible consequences of that choice.  Cf. Lighton, 209 F.3d at 1222.  Furthermore, even after Plaintiff submitted his resignation, the USOC provided him with alternatives to quitting and offered to investigate his complaints.  Despite these options, Plaintiff insisted upon terminating his employment relationship with the USOC.

The nature of his decision to quit was apparent, and Plaintiff was represented by counsel at that time with respect to his ongoing disputes with the USOC.  Plaintiff was given almost a full work week to rescind his resignation.

---

[7] We have previously explained that the fact that a plaintiff subjectively considers his or her workplace stressful and may have suffered personal health problems as a result is not an objective criterion used to determine if a reasonable employee would have been compelled to resign.   See Sanchez, 164 F.3d at 534.

[8] Plaintiff's allegation of racial harassment and hostility is unsupported by record evidence.  Plaintiff has submitted evidence that the USOC did not employ any African-Americans in the organizational hierarchy above him. He has not, however, demonstrated any particular instances of racial harassment or any circumstances demonstrating racial hostility.

Nevertheless, Plaintiff insisted that his resignation was effective immediately, rejecting USOC officials' efforts to accept his resignation as of a later date.

Plaintiff's attempt to re-cast his voluntary decision to quit as a constructive discharge by the USOC thus falls well short of the mark. Because Plaintiff has failed to show an adverse employment action, it follows that he has failed to establish a prima facie case as to his discriminatory constructive discharge claim.

### C. Failure to Promote

#### 1. Chief Medical Officer

Plaintiff next argues that he was promised that a position of Chief Medical Officer would be established at the USOC and that he would be given the job, but that this promise was never fulfilled. He acknowledges that such a job did not exist at the USOC during his tenure there. Indeed, there is no evidence in the record that the USOC had considered anyone for such a position.

Plaintiff has not shown that he was treated less favorably than others with respect to not receiving the Chief Medical Officer position – the USOC did not hire or consider anyone for that job. Accordingly, we hold that Plaintiff has failed to establish a prima facie case of discrimination as to this claim. See Kendrick, 220 F.3d at 1229 (a prima facie case requires that the position in question remained open); see also McDonnell Douglas, 411 U.S. at 802 (in the

- 12 -

failure to hire context, a prima facie case requires that the plaintiff "applied for and was qualified for a job <u>for which the employer was seeking applicants</u>" and that the employer continued to seek applicants after rejecting him or her) (emphasis added); <u>Stone v. Autoliv ASP, Inc.</u>, 210 F.3d 1132, 1138 (10th Cir. 2000) (a prima facie case eliminates the most common nondiscriminatory reasons for the employer's action, including the absence of a vacancy for the job). An employer's failure to promote a plaintiff to a non-existent position is not enough to support a presumption of intentional racial discrimination.

Plaintiff's claim mirrors the failure to promote claim we rejected in <u>Sprague v. Thorn Americas, Inc.</u>, 129 F.3d 1355 (10th Cir. 1997). In that case, the plaintiff was a market analyst in the defendant's jewelry department who claimed that she should have been promoted to a position of "assistant product manager." <u>Id.</u> at 1359-60. There was no such position in the defendant's jewelry department at the time. <u>Id.</u> at 1362. We held that these facts could not support an inference of gender discrimination. <u>Id.</u> We explained: "It is indeed difficult for us to understand how [the plaintiff] can maintain that she was the victim of discrimination due to [the defendant's] refusal to promote her to the position of assistant manager of jewelry when such a position did not even exist." <u>Id.</u>

Accordingly, Plaintiff has failed to establish a prima facie case with respect to his claim that he was not promoted to the position of Chief Medical Officer at the USOC on account of his race.

### 2. Senior Managing Director of Sport Resources

Plaintiff also asserts that he should have been promoted to the position of Senior Managing Director of Sport Resources. Scott Blackmun, who is white, was appointed to this position in April 2000.

We first hold that Plaintiff failed to establish a prima facie case of race discrimination as to this claim because he has not pointed to any evidence showing that he was qualified for this position. Indeed, Plaintiff has cited to nothing in the record suggesting what the USOC's qualifications for its Senior Managing Director for Sport Resources might have been. See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1194 (10th Cir. 2000) (to establish a prima facie case, a plaintiff must "show[] she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue"). Plaintiff's bare assertion that "[t]here was no objective criteria for the qualifications of this position other than the perceptions of the individuals who had been discriminating against [him]" is clearly not sufficient to survive summary judgment absent any record support.

Furthermore, the USOC has produced a nondiscriminatory justification for hiring Blackmun rather than Plaintiff, and Plaintiff has not pointed to any record evidence suggesting that this justification was pretextual. Norman Blake, then-CEO of the USOC, declared that he selected Blackmun for this position because Blackmun "had, in effect, been acting as the Chief Executive Officer of USOC before my appointment and had won the respect of the USOC management and the NGBs [National Governing Bodies]." Blake further stated that he did not appoint Plaintiff to that position because he, unlike Blackmun, did not have credibility with the NGBs. Blake added that "I was aware that the consensus of Dr. Exum's supervisors was that he lacked strong leadership skills and was not an effective manager. My own experience with Dr. Exum confirmed this assessment."

To show pretext, the plaintiff must call into question the honesty or good faith of the USOC's assessment of his abilities. See Bullington v. United Airlines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). It is not enough that a factfinder could disagree with the employer's assessments. "The relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." Id.; see also Giannopoulos v. Brach & Brock Confections,

Inc., 109 F.3d 406, 411 (7th Cir. 1997) ("[A plaintiff] cannot avoid summary judgment with an unadorned claim that a jury might not believe [defendant's] explanation for his termination; he must point to evidence suggesting that [defendant] itself did not honestly believe that explanation.").

Although Plaintiff obviously has his own opinion about his leadership and managerial skills, he has not demonstrated a genuine factual dispute about the genuineness of the USOC's assessment of his abilities. Cf. Bullington, 186 F.3d at 1317 n.13. Accordingly, Plaintiff failed to meet his burden at the summary judgment stage of presenting evidence that the USOC's reasons for not appointing him as Senior Managing Director of Sport Resources were merely pretextual.

For these reasons, summary judgment in favor of the USOC was proper with respect to Plaintiff's claim that he was denied the Senior Managing Director of Sport Resources position because of his race.

### D. Failure to Recommend Plaintiff for CEO of the USADA

Finally, Plaintiff alleges that the USOC discriminated against him on account of race by not submitting his name to the USADA for consideration for that organization's CEO position. We hold that Plaintiff failed to show that the USOC treated him less favorably than anyone else in this respect, and that Plaintiff therefore failed to establish a prima facie case as to this claim.

- 16 -

Plaintiff alleges that he had expressed interest in leading the USADA and asked USOC officials to submit his name to the USADA for consideration to be that organization's Chief Executive Officer. In response to his request, Plaintiff received an e-mail thanking him for his interest in the position, and stating "I will make sure they contact you regarding this position." Plaintiff acknowledges that others similarly requested USOC officials to submit their names to the USADA for consideration as its CEO.

In March 2000, the USADA Board of Directors selected Terry Madden, who is white, as its Chief Executive Officer. Two USOC officials, Barron Pittenger and Frank Marshall, attended the meeting at which Madden was selected, but there is no evidence that they participated in any way in the USADA's decision-making process. Most significantly, nothing in the record suggests that the USOC submitted any names to the USADA for consideration.

Plaintiff's failure to show that he was treated any differently than any other USOC employee seeking the USADA's CEO position is fatal to his claim that the USOC's failure to submit his name to the USADA was a product of intentional racial discrimination. Therefore, we hold that Plaintiff failed to establish a prima facie case of race discrimination as to this claim as well.

E.  State Law Claims

A district court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction. See 28 U.S.C. § 1367(c)(3); Doe v. Bagan, 41 F.3d 571, 573, 577 (10th Cir. 1994) (approving dismissal of state law claims for lack of subject matter jurisdiction after summary judgment was granted as to all federal claims); cf. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  We review the district court's decision to decline supplemental jurisdiction for abuse of discretion.  See Gold v. Local 7 United Food & Commercial Workers Union, 159 F.3d 1307, 1310 (10th Cir. 1998), overruled on other grounds by Styskal v. Weld County Comm'rs., 365 F.3d 855 (10th Cir. 2004).

For the reasons explained above, the district court properly granted summary judgment in favor of the USOC as to all of Plaintiff's federal claims. Having done so, the court was well within its discretion in declining supplemental jurisdiction over the remainder of Plaintiff's claims and the USOC's counterclaims, and dismissing those claims without prejudice.

## CONCLUSION

We AFFIRM the judgment of the district court granting summary judgment to the USOC as to all of Plaintiff's claims under 42 U.S.C. § 1981 and dismissing the remaining claims and counterclaims without prejudice.