**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 19 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GF GAMING CORPORATION, doing
business as Famous Bonanza and as
Easy Street Casino, a Colorado
corporation; BLUE SPRUCE
INVESTMENT CORPORATION, a
Colorado corporation; GRIMES
GAMING CORPORATION, a
Colorado corporation; ANNIE
OAKLEY'S EMPORIUM, INC., a
Colorado corporation; EUREKA
CREEK DEVELOPMENT, INC.,
a Colorado corporation; BABY
DOE DEVELOPMENT, INC.,
a Colorado corporation; PROLAND
MANAGEMENT, LLC, a Colorado
corporation; SHEFTEL
CHARITABLE REMAINDER
UNITRUST, an entity domiciled in
Colorado; WILHELM LORENZ,
individually,

          Plaintiffs,

and

No. 04-1177

GALACTIC GAMING, INC., a
Nevada corporation,

Plaintiff-Appellant,

v.

CITY OF BLACK HAWK,
COLORADO, a home rule city
and municipal corporation of
Colorado; BLACK HAWK CASINO
OWNERS ASSOCIATION, a
Colorado political committee;
HORSESHOE CASINO, LLC, doing
business as Canyon Casino, a
Colorado limited liability company;
BLACK HAWK BREWERY AND
CASINO, LLC, doing business as
Mardi Gras Casino, a Colorado limited
liability company; BLACK HAWK
GAMING AND DEVELOPMENT
CO., INC., a Colorado corporation;
BLACK HAWK DEVELOPMENT
NORTH, LLC, a Colorado limited
liability company; BH GATEWAY,
LLC, doing business as Jackpot
Springs, a Colorado limited liability
company; PROSPECTOR 141, LLC, a
Colorado limited liability company;
WOODMONT DEVELOPMENT
COMPANY, INC., a Texas
corporation; KATHRYN ECCKER,
individually and in her official
capacity as Mayor of the City of Black
Hawk; JAMES S. MALONEY,
individually and in his official
capacity as City Attorney for the City
of Black Hawk; LYNNETTE

HAILEY, individually and in her official capacity as City Manager for the City of Black Hawk; SUSAN BARNES, an individual domiciled in Colorado, MEDILL BARNES, an individual domiciled in Colorado; LARY P. BROWN, an individual domiciled in Colorado; PHYLLIS BROWN, an individual domiciled in Colorado; HERBERT W. BOWLES, an individual domiciled in Colorado,

Defendants-Appellees.

GF GAMING CORPORATION, doing business as Famous Bonanza and as Easy Street Casino, a Colorado corporation; BLUE SPRUCE INVESTMENT CORPORATION, a Colorado corporation; GRIMES GAMING CORPORATION, a Colorado corporation; ANNIE OAKLEY'S EMPORIUM, INC., a Colorado corporation; EUREKA CREEK DEVELOPMENT, INC., a Colorado corporation; BABY DOE DEVELOPMENT, INC., a Colorado corporation; PROLAND MANAGEMENT, LLC, a Colorado corporation; SHEFTEL CHARITABLE REMAINDER UNITRUST, an entity domiciled in Colorado; WILHELM LORENZ, individually,

Plaintiffs-Appellants,

No. 04-1178

-3-

and

GALACTIC GAMING, INC., a
Nevada corporation,

        Plaintiff,

v.

CITY OF BLACK HAWK,
COLORADO, a home rule city
and municipal corporation of
Colorado; BLACK HAWK CASINO
OWNERS ASSOCIATION, a
Colorado political committee;
HORSESHOE CASINO, LLC, doing
business as Canyon Casino, a
Colorado limited liability company;
BLACK HAWK BREWERY AND
CASINO, LLC, doing business as
Mardi Gras Casino, a Colorado limited
liability company; BLACK HAWK
GAMING AND DEVELOPMENT
CO., INC., a Colorado corporation;
BLACK HAWK DEVELOPMENT
NORTH, LLC, a Colorado limited
liability company; BH GATEWAY,
LLC, doing business as Jackpot
Springs, a Colorado limited liability
company; PROSPECTOR 141, LLC,
a Colorado limited liability company;
WOODMONT DEVELOPMENT
COMPANY, INC., A Texas
corporation; KATHRYN ECCKER,
individually and in her official
capacity as Mayor of the City of Black
Hawk; JAMES S. MALONEY,

individually and in his official capacity as City Attorney for the City of Black Hawk; LYNNETTE HAILEY, individually and in her official capacity as City Manager for the City of Black Hawk; SUSAN G. BARNES, an individual domiciled in Colorado; MEDILL BARNES, an individual domiciled in Colorado; LARY P. BROWN, an individual domiciled in Colorado; PHYLLIS BROWN, an individual domiciled in Colorado; HERBERT W. BOWLES, an individual domiciled in Colorado,

Defendants-Appellees.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 01-D-964 (MJW))**

---

Diane Vaksdal Smith, Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Englewood, Colorado (David P. Hersh, Burg, Simpson, Eldredge, Hersh & Jardine, P.C., Englewood, Colorado, John F. Reha, Arckey & Reha, LLC, Littleton, Colorado, with her on the briefs), for Plaintiffs-Appellants.

Robert F. Hill, Hill & Robbins, P.C., Denver, Colorado (Jennifer H. Hunt, Hill & Robbins, P.C., Denver, Colorado, with him on the brief), for Defendants-Appellees.

Scott D. Albertson and Eric E. Torgersen, Holley, Albertson & Polk, P.C., filed a brief for Defendant-Appellee Woodmont Development Company.

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Plaintiffs-appellants, consisting mainly of businesses and property owners in and around the Colorado city of Central City, sued the neighboring city of Black Hawk; Black Hawk's mayor, city attorney, and city manager; and several casinos, associations, and individuals primarily in and around Black Hawk. Plaintiffs allege that defendants engaged in a conspiracy to restrain and monopolize trade in the limited gaming industry[1] in Gilpin County, Colorado, in violation of federal and state antitrust laws. The United States District Court for the District of Colorado granted defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). This court has jurisdiction under 28 U.S.C. § 1291. Because plaintiffs' claims for injunctive and declaratory relief became moot after the district court entered judgment in this case and defendants are immune from the remaining claims for damages, this court concludes that the complaint fails to state a claim on which relief can be granted. The decision of the district court is

---

[1]Limited gaming is defined as "the use of slot machines and the card games of blackjack and poker, each game having a maximum single bet of five dollars." Colo. Const. art. XVIII, § 9(4)(b).

**vacated** as to the claims for injunctive and declaratory relief and **affirmed** as to the claims for damages. The district court's decision to dismiss certain state-law claims with prejudice is also **affirmed**.

## II.    BACKGROUND[2]

Pursuant to the Colorado constitution, limited gaming is permitted in the state of Colorado only in the cities of Central City, Black Hawk, and Cripple Creek. Colo. Const. art. XVIII, § 9(1). Central City and Black Hawk are neighboring towns located approximately twenty-five miles west of Denver. At the time the complaint was filed, visitors could reach Central City only by taking Highways 119 and 279 through Black Hawk. Plaintiffs allege that casino customers passing through Black Hawk on their way to Central City often faced highway construction and detours engineered by Black Hawk in an attempt to divert passengers away from Central City and into its own casinos.

To avoid the continuing loss of business to Black Hawk, Central City began planning a new highway known as the "southern access road" that would bypass Black Hawk and provide direct access to Central City from Interstate 70. A

---

[2]Plaintiffs' claims were dismissed by the district court pursuant to Fed. R. Civ. P. 12(b)(6), and this court therefore "must take as true all well-pleaded allegations in the plaintiff's complaint." *Curtis Ambulance of Fla., Inc. v. Bd. of County Comm'rs*, 811 F.2d 1371, 1374 (10th Cir. 1987). Accordingly, the factual background in this case will be drawn from plaintiffs' second revised third amended complaint, which is the operative pleading here.

substantial portion of the area necessary for construction of the road was owned by Proland Management, LLC ("Proland"), which desired to annex its property to Central City in order to obtain municipal services. Central City began negotiating an agreement with Proland under which the property would be annexed and Proland would in turn pay for construction of the portion of the road crossing its property.

Under the Colorado constitution, municipalities may not annex land without the agreement of more than fifty percent of the landowners in the area to be annexed. Colo. Const. art. II, § 30(1)(b).[3] Proland acquired sufficient signatures

---

[3]The Colorado constitution provides:

No unincorporated area may be annexed to a municipality unless one of the following conditions first has been met:

(a) The question of annexation has been submitted to the vote of the landowners and the registered electors in the area proposed to be annexed, and the majority of such persons voting on the question have voted for the annexation; or

(b) The annexing municipality has received a petition for the annexation of such area signed by persons comprising more than fifty percent of the landowners in the area and owning more than fifty percent of the area, excluding public streets, and alleys and any land owned by the annexing municipality; or

(c) The area is entirely surrounded by or is solely owned by the annexing municipality.

Colo. Const. art. II, § 30(1).

to satisfy the requirements of the constitution and submitted its annexation petition to Central City. In an attempt to block Proland's petition, Black Hawk allegedly conspired with the other defendants to purchase with public funds four mining claims located within the area of the proposed annexation. Shortly before Central City's scheduled hearing on the petition, Black Hawk then sold undivided one-percent interests in the mining claims to fourteen individuals and business entities for $500 each. These conveyances were styled as "open space preservation agreements," but plaintiffs allege that their actual purpose was to create enough landowners in the area of the proposed annexation to cause the percentage of landowners approving of the annexation to drop below fifty percent. The petition was thereby defeated, and Black Hawk instructed the holders of the mining claims to reconvey their interests back to the city.

The complaint further alleges that Black Hawk pressured landowner H. Thomas Winn to drop his petition to include a portion of his property in the annexation by threatening not to issue a certificate of occupancy for a casino Winn was planning to open in Black Hawk. When Winn withdrew his petition, the contiguity necessary for annexation was destroyed. Winn's withdrawal, combined with the defeat of Proland's annexation proposal, led Proland to abandon its annexation efforts and its offer to fund construction of the road.

Plaintiffs contend that once the road had been blocked, Black Hawk grew to dominate the limited gaming market in Gilpin County while casinos and related business in Central City fell into serious decline. A grand jury investigating the conveyances of the undivided interest in the mining claims concluded that Black Hawk's actions violated the spirit of the Colorado constitution and election laws. The grand jury's report also concluded that the actions of Black Hawk city officials constituted "misfeasance or malfeasance" and "misuse or misapplication of public funds." Because the practices were not specifically prohibited by state law, however, the grand jury did not return an indictment.

Plaintiffs filed suit in the District of Colorado, raising a variety of claims under the Sherman Act, 15 U.S.C. §§ 1, 2; the Colorado Antitrust Act, Colo. Rev. Stat. §§ 6-4-104, 6-4-105; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962; the Colorado Organized Crime Control Act, Colo. Rev. Stat. § 18-17-104; and Colorado contract and tort law. Plaintiffs requested declaratory and injunctive relief, compensatory damages, treble damages, punitive damages, costs, and attorneys' fees. Through a series of procedural rulings by the district court and voluntary withdrawal of some of the claims by plaintiffs, the district court dismissed all of plaintiffs' claims except those based on federal and state antitrust law. The court then held a hearing on the remaining issues and granted defendants' motion to dismiss the Sherman Act claims pursuant to Rule

12(b)(6). The court elected not to exercise supplemental jurisdiction over the Colorado Antitrust Act claims and dismissed these claims without prejudice. On appeal, plaintiffs challenge only the dismissal of their Sherman Act and Colorado Antitrust Act claims.[4]

## III.  STANDARD OF REVIEW

This court reviews *de novo* the dismissal of a complaint under Rule 12(b)(6). *S. Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1261-62 (10th Cir. 1998). In doing so, all facts alleged in the complaint are taken as true and all reasonable inferences are indulged in favor of the plaintiffs. *Curtis Ambulance of Fla., Inc. v. Bd. of County Comm'rs*, 811 F.2d 1371, 1374-75 (10th Cir. 1987).

## IV.  DISCUSSION

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Section 2 of the Sherman Act prohibits "monopoliz[ing], or attempt[ing] to monopolize, or combin[ing] or conspir[ing] with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Plaintiffs' second revised third amended complaint alleges that defendants violated both of these statutory

---

[4]Plaintiffs also argue the district court erred in declining to dismiss certain state-law tort claims without prejudice. *See infra* Section IV.E.

provisions by (1) purchasing and subdividing the mining claims in order to block

Proland's annexation petition, and (2) pressuring Winn to pull out of the proposed

annexation.[5]  In dismissing plaintiffs' Sherman Act claims, the district court

concluded the complaint did not state sufficiently specific allegations of antitrust

injury to confer standing on the plaintiffs.[6]  The court also concluded that some of

[5]The complaint also contains allegations that Black Hawk's Las Vegas-style casinos violate a provision of the Colorado constitution requiring limited gaming to be conducted in structures conforming to the architectural styles of the state's historic gambling towns.  Colo. Const. art. XVIII, § 9(3)(b).  Plaintiffs, however, explicitly disavowed reliance on these allegations in the district court.  Plaintiffs similarly disavowed reliance on allegations that Black Hawk frequently engaged in road construction and detours in an effort to deter prospective Central City customers.  Although they attempt to revive these allegations on appeal, this court will not consider arguments waived or abandoned in the district court.  *O'Connor v. City & County of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990).
Furthermore, plaintiffs did not argue before the district court and do not argue on appeal that their antitrust claims are supported by allegations in the complaint that defendants threatened other unnamed property owners with "adverse consequences" if they did not assist the effort to defeat the annexation, interfered with city council elections, threatened Central City with protracted litigation if the annexation was completed, presented "sham" objections in opposition to the proposed annexation, and interfered with the sale of municipal bonds.  Accordingly, this court will not consider these allegations in deciding whether the complaint can survive a motion to dismiss under Rule 12(b)(6).

[6]Plaintiffs argue the district court erred in failing to consider the contents of the grand jury report attached to the complaint in deciding whether the complaint stated an antitrust claim.  Written documents attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).  The district court, however, specifically stated at the hearing on the Rule 12(b)(6) motion that it had referred to the report when considering the sufficiency of plaintiffs' claims.  In any event, this court has consulted the report and concludes that the grand jury's findings are merely redundant to the allegations in the complaint.  *See Issa*

(continued...)

-12-

the defendants were immune from antitrust liability under the *Noerr-Pennington* doctrine.

This court can affirm the district court's dismissal on any ground sufficiently supported by the record. *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003). For somewhat different reasons than those relied on by the district court, this court also concludes that the complaint fails to state a claim on which relief can be granted.

## A.    Injunctive and Declaratory Relief

This court need not reach the merits of plaintiffs' claims for injunctive and declaratory relief because those claims became moot after the district court entered judgment in this case. Plaintiffs acknowledged at oral argument that Central City completed building the southern access road after the district court dismissed the case, and that their claims for injunctive relief have therefore become moot. In addition, the claims for declaratory relief have also become moot because a declaratory judgment would no longer have any effect on defendants' behavior. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1256-57 (10th Cir. 2004) (holding that an action for declaratory

---

[6](...continued)
*v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) ("[B]ecause the legal sufficiency of a complaint is a question of law, we may affirm the district court's dismissal order if we independently determine that plaintiff failed to state a claim." (quotation, citation, and alteration omitted)).

relief was moot when the requested declaration involved past conduct not likely to recur). Without expressing any opinion on the merits, this court therefore dismisses plaintiffs' claims for injunctive and declaratory relief and vacates the judgment of the district court as to these claims.

### B.     *Noerr-Pennington* **Immunity**

In addition to their claims for injunctive and declaratory relief, plaintiffs also request monetary relief including compensatory damages, treble damages, punitive damages, costs, and attorneys' fees. To the extent these claims are based on allegations that the non-governmental defendants[7] conspired with Black Hawk officials to block the proposed annexation, the claims are barred by the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine was established by the Supreme Court in a line of cases beginning with *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.* 365 U.S. 127 (1961). The Court in these cases has held that "[t]he federal antitrust laws [] do not regulate the conduct of private individuals in seeking anticompetitive action from the government." *City of Columbia v. Omni*

---

[7]The non-governmental defendants are the Black Hawk Casino Owners Association; Horseshoe Casino, LLC d/b/a Canyon Casino; Black Hawk Brewery and Casino, LLC d/b/a Mardi Gras Casino; Black Hawk Gaming and Development Co., Inc.; Black Hawk Development North, LLC; BH Gateway, LLC d/b/a Jackpot Springs; Prospector 141, LLC; Woodmont Development Co., Inc.; Susan Barnes; Medill Barnes; Lary Brown; Phyllis Brown; and Herbert Bowles.

*Outdoor Adver., Inc.*, 499 U.S. 365, 379-80 (1991). The doctrine arises from the Court's conclusion that the Sherman Act was not intended to derogate the First Amendment right of citizens to petition the government for a redress of grievances. *Noerr*, 365 U.S. at 136-39.

Aside from the allegations that certain defendants purchased interests in mining claims from the city,[8] there are no allegations in the complaint that non-governmental defendants engaged in any anticompetitive act other than the act of conspiring with Black Hawk officials. The complaint alleges that it was the city of Black Hawk, not the private defendants, that acquired the mining claims, divided them, and sold them with the purpose of blocking the proposed annexation. In addition, the complaint alleges that the decision whether to issue a certificate of occupancy to Winn "rested exclusively with Defendant Black Hawk" and that it was "Black Hawk, through its elected and/or appointed officials" that pressured Winn to pull out of the proposed annexation.

Standing alone, plaintiffs' allegations that the non-governmental defendants conspired with Black Hawk officials to block the southern access road is essentially an allegation that defendants met with city officials and urged them to take anticompetitive action. For purposes of *Noerr-Pennington*, there is no distinction between petitioning government officials and conspiring with them.

---

[8]These claims are discussed in Section IV.C.b, *infra*.

-15-

*City of Columbia*, 499 U.S. at 375, 383 ("It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became . . . co-conspirators in *some* sense with the private party urging such action." (quotations omitted)); *Boone v. Redevelopment Agency*, 841 F.2d 886, 894 (9th Cir. 1988) ("[C]ultivating close ties with government officials is the essence of lobbying."). The defendants' alleged conspiracy with Black Hawk therefore amounts to nothing more than lobbying of government officials, which is immune from Sherman Act liability under the *Noerr-Pennington* doctrine.

Plaintiffs' argument that defendants' alleged conspiracy was undertaken solely for the purpose of restraining trade is irrelevant, because "Noerr shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *see also City of Columbia*, 499 U.S. at 380 ("That a private party's political motives are selfish is irrelevant . . . ."). Even if defendants' sole motive for petitioning the Black Hawk officials was to injure competition, the conduct would still be protected by the *Noerr-Pennington* doctrine. *See Noerr*, 365 U.S. at 138-40. Nor does *Noerr*'s "sham" exception apply to this case. The sham exception is applicable when "persons use the governmental *process*–as opposed to the *outcome* of that process–as an anticompetitive weapon." *City of Columbia*,

499 U.S. at 380. The exception thus "involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all," such as a defendant who files "frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Id.* (quotation omitted). In this case, however, it was the outcome of defendants' lobbying (i.e., Black Hawk's decision to block the annexation petition) rather than the process of that lobbying that gives rise to the alleged antitrust injuries. The sham exception is therefore inapplicable here, and the non-governmental defendants are immune from liability under *Noerr-Pennington* for their petitioning of the Black Hawk officials.[9]

## C. Local Government Antitrust Act

### a. The Black Hawk Officials

Although the *Noerr-Pennington* doctrine establishes that the non-governmental defendants are not liable for requesting that Black Hawk engage in anticompetitive activities, it does not resolve the question whether city officials

---

[9]Plaintiffs' citation to *FTC v. Superior Court Trial Lawyers Ass'n* is inapposite. 493 U.S. 411 (1990). In that case, plaintiffs alleged that court-appointed defense attorneys had engaged in an anticompetitive boycott in order to force the District of Columbia government to increase their compensation. *Id.* at 414. Unlike *Superior Court Trial Lawyers Ass'n*, the alleged restraint of trade in this case was not the "*means* by which [defendants] sought to obtain favorable legislation," but rather the "intended *consequence* of public action." *Id.* at 425-26.

-17-

Kathryn Eccker, Lynnette Hailey, and James Maloney are liable for acceding to these requests.[10]  Defendants' claims for monetary relief against Black Hawk officials, however, are nevertheless barred by the Local Government Antitrust Act of 1984.  15 U.S.C. §§ 34-36 ("LGAA").

Congress passed the LGAA in response to "an increasing number of antitrust suits, and threatened suits, that could undermine a local government's ability to govern in the public interest." *See Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1564 (10th Cir. 1991) (quotation omitted).  The act provides that "[n]o damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employee thereof acting in an official capacity."  15 U.S.C. § 35(a).  The provisions of the Clayton Act cited by the LGAA provide the private damages remedy for violation of the Sherman Act. *Crosby v. Hosp. Auth.*, 93 F.3d 1515, 1536 (11th Cir. 1996).  According to the

---

[10]In addition to Eccker, Hailey, and Maloney, the city of Black Hawk was also named as a defendant in the initial complaint but was later dismissed as a party on plaintiffs' initiative.  The trial court also dismissed claims against Aldermen David Spellman, Haller Midcap, and Tom Kerr, who were identified in the original complaint as agents of defendant Black Hawk Development North, LLC.  Without supporting argument, plaintiffs ask this court to reinstate the claims asserted against these three defendants as agents of Black Hawk.  This court declines the invitation to reinstate these defendants in light of its conclusion that Black Hawk officials are in any event immune from liability under the Local Government Antitrust Act of 1984.

complaint, Eccker, Hailey, and Maloney were at "all times relevant" the mayor, city attorney, and city manager of Black Hawk. These defendants are therefore "official[s] or employee[s]" of local government and are immune from damages for violations of the Sherman Act.

Plaintiffs nevertheless argue the city officials were not "acting in an official capacity" within the meaning of the LGAA because they acted beyond the scope of their authority and pursuant to their personal interests when they entered into a conspiracy to block the southern access road. The legislative history of the LGAA, however, demonstrates that Congress intended the phrase "acting in an official capacity" to be given broad meaning encompassing all "lawful actions, undertaken in the course of a defendant's performance of his duties, that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his position." *Sandcrest Outpatient Svcs., P.A. v. Cumberland County Hosp. Sys., Inc.*, 853 F.2d 1139, 1145 (4th Cir. 1988). In this case, plaintiffs do not allege that the city officials lacked the authority to cause the city of Black Hawk to sell the undivided interests in the mining claims or to withhold Winn's certificate of occupancy. Their only contention is that in exercising these legitimate powers the city officials acted pursuant to an illegitimate motive. The LGAA, however, "makes no provision for consideration of a defendant's motives." *Id.* at 1146 (rejecting

the "argument that allegations of a conspiracy convert otherwise authorized conduct into unauthorized conduct"); *see also Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991) ("An allegation of conspiracy is akin to an allegation that [defendants' conduct] was done in bad faith or with malice," which is "clearly irrelevant in determining the application of the immunity." (quotation omitted)); *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1477 (10th Cir. 1990).

For these reasons, this court concludes that the Black Hawk officials are immune from monetary liability for Sherman Act violations.

### b. The Private Defendants

Although the *Noerr-Pennington* doctrine establishes that the non-governmental defendants are not liable for their lobbying of Black Hawk, it does not establish whether these defendants are also immune to claims for monetary relief based on allegations that they purchased the undivided interests in mining claims for the purpose of blocking the proposed annexation.[11] The purchase of these mining claims was allegedly an act independent of the petitioning of Black Hawk officials and was not part of an attempt to influence government action.

_____

[11]The complaint alleges that the following defendants purchased undivided one-percent interests in the mining claims in exchange for payments of $500: Susan Barnes, Medill Barnes; Lary Brown; Phyllis Brown; Herbert Bowles; Geraldine Bowles; Eagle Gaming, LLC; Black Hawk Brewery, LLC; 101 Main Street, LLC; Black Hawk Gaming and Development Co., Inc.; Black Hawk Development North, LLC; BH Gateway, LLC; Woodmont Development Co., Inc.; and Prospector 141, LLC.

Because holding defendants' liable for their purchase of the mining interests would not implicate their First Amendment right to petition government, this activity is not subject to protection under the *Noerr-Pennington* doctrine. Like the Black Hawk officials, however, these defendants are nevertheless immune from monetary liability under the LGAA.

The LGAA precludes monetary damages "in any claim against a person based on any official action directed by a local government." 15 U.S.C. § 36(a). In determining whether the action of a private individual constitutes "official action directed by a local government" for purposes of the LGAA, other circuits have applied by analogy the Supreme Court's precedents on the question whether a private individual's action is entitled to state-action immunity under *Parker v. Brown*, 317 U.S. 341 (1943). *See Crosby*, 93 F.3d at 1536; *Cohn*, 953 F.2d at 157; *Sandcrest*, 853 F.2d at 1143. In *Parker*, the Supreme Court held that the Sherman Act was not "intended to restrain state action or official action directed by a state." *Parker*, 317 U.S. at 351. The Court subsequently extended the holding in *Parker* to private individuals acting at the direction of the state, setting forth a two-part test for determining whether such an individual should not be subjected to liability. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). First, "the challenged restraint must be one clearly articulated and affirmatively expressed as state policy." *Id.* (quotation

omitted). Second, "the policy must be actively supervised by the State itself." *Id.* (quotation omitted).

The Conference Report to the LGAA, explicitly agreed to by both houses of Congress, explains that the phrase "official action directed by" found in *Parker* and subsequent cases interpreting it "shall apply by analogy to the conduct of a local government in directing the actions of non-governmental parties, as if the local government were a state." H.R. Conf. Rep. No. 98-1158, *reprinted in* 1984 U.S.C.C.A.N. 4602, 4627; *see also Sandcrest*, 853 F.2d at 1143. Applying the two-part test by analogy to the private defendants here, the relevant questions therefore become: (1) whether the challenged restraint was the clearly articulated and affirmatively expressed policy of Black Hawk, and (2) whether the policy was actively supervised by Black Hawk. *See Crosby*, 93 F.3d at 1536 ("[W]e apply by analogy the *Parker* doctrine to the relationship between the [local government entity] (i.e., the entity under the LGAA which is analogous to the State in the state action immunity context) and the individual [defendants] (i.e., the entities under the LGAA which are analogous to private parties in the state action immunity context).").

The "clear articulation" requirement of *Midcal*'s first prong is satisfied if the provisions in question "plainly show that the legislature contemplated the kind of action complained of." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 44

(1985) (quotations omitted). This requirement is met by analogy in this case, when plaintiffs allege not only that Black Hawk contemplated the anticompetitive effects of selling the mining interests, but that the city affirmatively participated in the conspiracy to block construction of the road. The "active supervision" test of the second *Midcal* prong "requires that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy." *Patrick v. Burget*, 486 U.S. 94, 101 (1988). The purpose of this test is "to determine whether the State has exercised sufficient independent judgment and control so that the details of the [state action] have been established as a product of deliberate state intervention, not simply by agreement among private parties." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 634-35 (1992). Here, because Black Hawk was the owner of the mining claims, it necessarily had the power to review and disapprove of the sale of the claims to the private defendants. The act of purchasing the undivided interests in the mining claims therefore constitutes "official action directed by a local government" for purposes of the LGAA.

As with the city officials, plaintiffs' allegations that the private defendants were engaged in a conspiracy to further private interests is irrelevant to the question whether they are entitled to immunity under the LGAA. *See City of Columbia*, 499 U.S. at 374; *Allright Colorado, Inc. v. City & County of Denver*,

937 F.2d 1502, 1511 (10th Cir. 1991) ("The availability of *Parker* immunity . . . does not depend on the subjective motivation of the individual actors." (quotation omitted)). Regardless of their intent, the private defendants are therefore immune from liability under the LGAA for their purchase of the mining interests.

**D.    Colorado Antitrust Act**

Because the district court properly dismissed all of plaintiffs' federal claims, it was within its discretion in declining to exercise supplemental jurisdiction over plaintiffs' state-law claims under the Colorado Antitrust Act. *See* 28 U.S.C. § 1367(c)(3); *Exum v. United States Olympic Committee*, 389 F.3d 1130, 1138-39 (10th Cir. 2004). The court therefore did not err in dismissing the state antitrust claims without prejudice.

**E.    State-Law Tort Claims**

As a final matter, plaintiffs argue the district court erred in dismissing with prejudice its state-law claims for intentional interference with prospective business advantage, civil conspiracy, and intentional interference with contractual relations. Plaintiffs explicitly withdrew these claims with prejudice as to defendants David Spellman, Haller Midcap, Tom Kerr, Kathryn Eccker, James Maloney, and Lynnette Hailey. As to the remaining defendants, plaintiffs withdrew the claims without stating whether the withdrawal was to be with or without prejudice. The district court ordered the claims dismissed with prejudice.

Plaintiffs then filed a motion for "clarification" of the district court's order. The district court denied the motion and reasserted that the dismissal was with prejudice.

Plaintiffs argue that voluntary dismissal of a claim by a plaintiff is without prejudice "[u]nless otherwise stated in the notice of dismissal." Fed. R. Civ. P. 41(a)(1). As defendants correctly point out, however, Rule 41(a)(1) applies only to a voluntary dismissal by a plaintiff that was filed "at any time before service by the adverse party of an answer or of a motion for summary judgment," or that is "signed by all parties who have appeared in the action." *Id.* Otherwise, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2). Because defendants filed answers prior to plaintiffs' voluntary dismissal of their tort claims, plaintiffs conceded in the district court that a court order was necessary for the voluntary dismissal to be effective. For claims that must be dismissed pursuant to court order, Rule 41(a)(2) provides that the dismissal is to be without prejudice "[u]nless otherwise specified in the order." *Id.* In this case, the court's order dismissing the tort claims specified that dismissal was with prejudice as to all defendants.

When a party seeking to voluntarily dismiss a claim pursuant to Rule 41(a)(2) is silent as to whether the dismissal should be with or without prejudice,

the district judge is required to interpret the motion one way or the other. *United States ex rel Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 810-11 (10th Cir. 2002). This court reviews the district court's interpretation for abuse of discretion. *Id.* The district court in interpreting plaintiffs' voluntary dismissal here relied on the procedural history of the case, including plaintiffs' apparent concession that the dismissal was with prejudice and failure to present any arguments to the contrary. Plaintiffs present no explanation on appeal as to how the court abused its discretion in making this determination. This court therefore declines to reverse the district court on this ground.

## V. CONCLUSION

Because plaintiffs' claims for injunctive and declaratory relief became moot after the district court entered judgment in this case, this court **DISMISSES** those claims for lack of jurisdiction and **VACATES** the judgment of the district court as to those claims. This court **AFFIRMS** the judgment of the district court as to the claims for monetary relief and the dismissal with prejudice of plaintiffs' claims for intentional interference with prospective business advantage, civil conspiracy, and intentional interference with contractual relations.