FILED
United States Court of Appeals
Tenth Circuit

May 12, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHEM FISCHER,

      Plaintiff-Appellant,

v.

FORESTWOOD COMPANY, INC., a
Utah corporation,

      Defendant-Appellee.

No. 06-4121

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:02-CV-210-DAK)**

---

James W. Stewart (Boyd L. Rogers with him on the briefs) Ballard Spahr
Andrews & Ingersoll, LLP, Salt Lake City, Utah, for Appellant.

Raymond Scott Berry, Salt Lake City, Utah (Rodney R. Parker, Snow,
Christensen & Martineau, Salt Lake City, Utah, with him on the brief) for
Appellee.

---

Before **HARTZ**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

      Shem Fischer sued Forestwood Company, Inc., under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), for unlawful

discharge, retaliation, and failure to hire. He alleged that Forestwood discriminated against him because he was expelled from the Fundamentalist Church of Jesus Christ of Latter-Day Saints (FLDS) and because he objected to the company firing another employee who had also left the church.

The district court granted Forestwood summary judgment on all claims. We AFFIRM the district court's grant of summary judgment on the claims of unlawful discharge and retaliation. Finding the district court improperly excluded certain evidence as inadmissible hearsay, however, we REVERSE the grant of summary judgment on the failure-to-hire claim and REMAND for further proceedings.

## I. Background

Forestwood is a family-owned business in Hildale, Utah, that manufactures and installs wooden cabinetry. Fischer worked at Forestwood full-time from 1987 until July 2000. He served many roles during that time; working first as a shop-worker, then as an installer, and finally as a salesman. When Fischer's tenure ended, he was the company's top cabinet salesman. While Fischer was employed by Forestwood, his half-brother, Marvin, managed the company, and his father, Erwin, served as its president. Another half-brother, David, was also employed by the company.

Forestwood's management (including Marvin and Erwin) were closely involved with the FLDS, whose principal congregation was located in Hildale.

The company had given cash donations to the FLDS in the past. Since at least 1999, the company refused to hire or interview anyone who was not a member of the FLDS church. At the time Fischer filed his complaint with the EEOC, only one employee—out of seventy total employees—was not a member of the church.

From 1991 through 2000, Fischer worked closely with John Musser, who prepared cabinet patterns for Forestwood. Musser, like Fischer, was a member of the FLDS church during most of that time. In August or September 1999, Musser and his wife decided to leave the FLDS and become members of the LDS church. They moved 24 miles up the road from Hildale to Hurricane because they felt uncomfortable continuing to live among FLDS members. For the next year, Musser continued to work for Forestwood because he derived a substantial portion of his income from this employment.

About the time Musser left the FLDS church, Fischer publicly criticized the church and began skipping church functions. As a result, his co-workers sometimes heckled him. Fischer also claimed anonymous notes expressing concern about his faith were left on his car's windshield and in his message box at work. He felt increasingly uncomfortable at Forestwood. In the spring of 2000, he was formally expelled from the FLDS church.

On July 16, 2000, Warren Jeffs (counselor, son, and heir to FLDS prophet and leader Rulon Jeffs) delivered a sermon urging FLDS members to stop supporting apostates through their business relationships. Jeffs believed funds

from those relationships were being used to fight the church. He urged members to "[b]e kind to everyone, but leave apostates alone," and called upon the membership to "stop helping our enemies fight against us." R., Vol. I at 115–20.

A short time later, Fischer met with his half-brothers Marvin and David. At that meeting, Marvin informed Fischer that he planned to fire Musser. Fischer objected to this termination, arguing firing Musser would constitute religious discrimination and would "be over the top of me." Marvin responded by saying "if that's the way it's got to be." R., Vol. II at 372. Fischer interpreted Marvin's statement as indicating he was fired. Soon after this exchange, however, Marvin asked Fischer to reconsider leaving the company. Fischer did not accept this proposal. Instead, he asked if he could have time to finish up his current projects. Marvin agreed and Fischer left the company a short time later.

In November 2000, Fischer sought reinstatement with the company. He approached his father, Erwin, who was president of the company. Fischer surreptitiously taped two of the conversations. In the first conversation, he pushed hard for reinstatement, but his father held back, claiming someone else had already taken over Fischer's previous duties. Erwin ended the conversation by saying he would discuss the issue with the company and others. In the second conversation, Erwin indicated he wanted Fischer back at the company, but only if Fischer rejoined the church.

## II. Discussion

Fischer sued Forestwood under Title VII for unlawful discharge, retaliation, and failure to hire.[1]  The district court granted Forestwood summary judgment on all three claims.  In reaching this decision, the court also decided the two recorded conversations between Fischer and Erwin were inadmissible hearsay.

### A.  Standard of Review

We review a grant of summary judgment de novo.  *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007).  Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in the non-movant's favor.  *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006).

"While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the

---

[1] As a prerequisite to all three Title VII claims, Fischer must show that he was an employee of Forestwood or was seeking to be rehired as an employee.  *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998).  In evaluating Forestwood's summary judgment motion, the district court assumed, without deciding, that Fischer was an employee rather than an independent contractor.  We make the same assumption.

jury to survive summary judgment." *Piercy*, 480 F.3d at 1197. "When a party relies on affidavit evidence, it may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Id.* at 1197–98.

## B. Unlawful Discharge and Retaliation

Fischer first argues he was fired because he dropped out of the FLDS church and protested the treatment of his friend, Musser. The district court concluded Fischer did not produce sufficient evidence demonstrating he was subjected to an adverse employment action. We agree.

Under Title VII, an employer must not discharge "any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). When the plaintiff only puts forth circumstantial evidence of discrimination, we evaluate such claims under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework.[2] *Stover v. Martinez*, 382 F.3d 1064, 1077 (10th Cir. 2004) (citing *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1037–38 (10th Cir. 1993)). To

---

[2] Fischer did not argue to the district court that his claim was supported by direct evidence of discrimination. *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (holding that arguments not raised in the district court are waived on appeal). Fischer also did not raise this issue on appeal. "[A]rguments not set forth fully in the opening brief are waived." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998). Therefore, it is unnecessary to reach the question of whether Fischer could instead proceed under a mixed motive framework. *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1226–27 (10th Cir. 2008) (describing the mixed motive framework).

establish a prima facie unlawful discharge case, the plaintiff must show the

following:

> (1) *that he was subjected to some adverse employment action*;
> (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and
> (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.

*Shapolia*, 992 F.2d at 1038 (internal citations omitted and emphasis added).

Once the plaintiff establishes a prima facie case, the burden shifts to the

defendant to articulate a legitimate nondiscriminatory reason for its decision to

discharge the plaintiff. If the defendant meets its burden of production by

offering a legitimate rationale in support of its employment decision, the burden

shifts back again to the plaintiff to show that the defendant's proffered reasons

were a pretext for discrimination. *Exum v. United States Olympics Comm.*, 389

F.3d 1130, 1134–35 (10th Cir. 2004).

Fischer also alleges Forestwood retaliated against him because he objected

to the company firing Musser.[3] In particular, Fischer told Marvin that the

---

[3] As a prerequisite to a establishing a retaliation claim, Fischer must prove that he reasonably believed that by firing Musser, Forestwood would be violating Title VII. *Bd. of County Comm'rs, Fremont County v. EEOC*, 405 F.3d 840, 852 (10th Cir. 2005) ("Title VII permits employees to maintain retaliation claims based on a reasonable good-faith belief that the underlying conduct violated Title VII."). In particular, Fischer must show he had a good faith belief that Musser was an employee (not an independent contractor) of Forestwood. The district court assumed for the purposes of evaluating the summary judgment motion that

(continued...)

-7-

termination of Musser was unlawful because it was based solely on the fact that Musser was no longer a member of the FLDS church. Title VII forbids retaliation against an employee because he "opposed any practice made unlawful by Title VII, or because he "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Without direct evidence of discrimination,[4] we analyze retaliation claims under the *McDonnell Douglas* framework. *Stover*, 382 F.3d at 1070. To establish a prima facie case of retaliation, Fischer must show (1) he engaged in protected opposition to discrimination; (2) *Forestwood took an adverse employment action against him*; and (3) a causal connection exists between the protected activity and the adverse action. *Id.* at 1071. As in an unlawful discharge claim, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a non-discriminatory reason for the conduct, and then the plaintiff has the burden of demonstrating pretext.

In sum, to establish a prima facie case on both the unlawful discharge and retaliations claims, Fischer must prove that the company subjected him to an adverse employment action. An adverse employment action "must be materially

[3](...continued)
Musser was an employee. We likewise make the same assumption.

[4] Fischer never argues before the district court or on appeal that he produced direct evidence of discrimination. Because Fischer waived the issue, it is unnecessary to determine whether Fischer instead could have pursued his claim under the mixed motive framework. *See supra* note 2.

adverse to the employee's job status." *Duncan v. Manager, Dep't of Safety, Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005). Proof of either actual or constructive discharge satisfies this requirement. *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *Rennard v. Woodworker's Supply, Inc.*, 101 F. App'x 296, 308–09 (10th Cir. 2004).

*1. Actual discharge*

"An actual discharge . . . occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated." *Chertkova*, 92 F.3d at 88; *see also Pennypower Shopping News, Inc. v. NLRB*, 726 F.2d 626, 629 (10th Cir. 1984) ("The test of whether an employee has been discharged depends on the reasonable inferences that the employee could draw from the statements or conduct of the employer."). An actual discharge does not occur, however, when the employee chooses to resign rather than work under undesirable conditions. *See, e.g.*, *Robinette v. Nat'l Credit Servs. Corp.*, 182 F. Supp. 2d 1055, 1059 (D. Kan. 2001) (holding employee was not actually discharged when she resigned after being demoted).

As evidence of actual discharge, Fischer cites the following testimony from his deposition:

> I said—Marvin made the statement that—he says, you know, we need to release John Musser, and I says if you release John Musser it will be over the top of me. And Marvin paused for about five, maybe ten seconds and just kind of looked at me and he says, okay, if that's the way it's got to be. Then he paused for about three seconds. I was

shocked that I'd just been fired for opposing the release of a fellow worker, someone that did a lot of work for me, over religious beliefs. And in my mind I just clearly had been fired. He said, okay, if that's the way it's got to be.

R., Vol. II at 371. Marvin then urged him to reconsider. Fischer refused to change his mind, but requested "eight weeks to wrap up my business here." *Id.* at 372. Marvin granted him this request.

This testimony does not support Fischer's claim that he was actually discharged. The record discloses the following facts. (1) Marvin told Fischer that Musser was to be released. (2) Fischer disagreed with the decision and told Marvin that it would not be acceptable. (3) Marvin never told him he was discharged for this stance, only that Marvin would not change his position about Musser. (4) Marvin, moreover, plainly told Fischer he had the option of remaining with the company. (5) Fischer nonetheless chose not to remain with Forestwood because he disapproved of the company's decision to release Musser. (6) Finally, Fischer submitted a complaint to the EEOC where he noted he was "forced to quit" by the company, not that he was fired. R., Vol. I at 128.

In sum, because Fischer chose to resign rather than work for a company he believed had wronged Musser, we agree with the district court that he was not actually discharged.

## 2. Constructive discharge

Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that he was constructively discharged. The plaintiff's burden in establishing constructive discharge is substantial. *EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (explaining "[t]he bar is quite high in [constructive discharge] cases"). A constructive discharge occurs only "when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum*, 389 F.3d at 1135. We evaluate the voluntariness of an employee's resignation under an objective, totality of the circumstances standard. *Id.* at 1136.

Several cases show the type of evidence plaintiffs must produce to meet their burden. For example, in *Acrey v. American Sheep Industry Ass'n*, 981 F.2d 1569, 1574 (10th Cir. 1992), we concluded a plaintiff alleging discrimination under the Age Discrimination in Employment Act produced sufficient evidence establishing she was constructively discharged. On multiple occasions, her supervisor asked her to quit, citing her age and her image. Furthermore, her supervisor repeatedly confronted her with a litany of performance shortcomings. The supervisor took away longstanding job responsibilities and gave the employee inadequate information and training to perform her new responsibilities. The

plaintiff, "too tired" to fight, finally resigned. *Id.* Because the supervisor made it nearly impossible for the plaintiff to continue performing her job, we concluded she was constructively discharged.

But an employee cannot survive summary judgment merely by producing evidence showing that working conditions were difficult or unpleasant. *Exum*, 389 F.3d at 1135. For example, in *PVNF*, 487 F.3d at 794, the EEOC produced evidence demonstrating that the defendant repeatedly subjected female employees to sexually explicit and derogatory remarks. Even so, we concluded the EEOC failed to produce sufficient evidence demonstrating working conditions were so intolerable that a female employee who quit was constructively discharged. *Id.* at 806.

Likewise, in *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379 (10th Cir. 1991), an Iranian supervisor sued his employer under Title VII for constructive discharge. The plaintiff produced evidence showing that he resigned because his employer (1) made derogatory remarks about the fact that he was Iranian, (2) ordered him to take a polygraph examination because of his national origin, (3) belittled and mistreated him at company seminars, and (4) ordered him to fire or eliminate other Iranians employed by the company. *Id.* at 1384. Despite this harassment, we concluded these conditions did not make the workplace sufficiently intolerable that the plaintiff was constructively discharged. *Id.* at 1386.

Even some evidence of discriminatory animus in the workplace will not necessarily establish a constructive discharge claim. *See Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004) ("A hostile-environment constructive discharge claim entails something more [than conduct that amounts to actionable harassment]"); *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1229 (10th Cir. 2001), *overruled on other grounds by Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003) ("[A] finding of constructive discharge may not be based solely on a discriminatory act; there must also be aggravating factors that make staying on the job intolerable.") (internal quotation marks omitted); 1-15 *Larson on Employment Discrimination* § 15.08 (2007) ("The mere existence of discrimination will not normally constitute the kind of intolerable conditions that would make a reasonable person feel compelled to quit.").

Applying these principles here, Fischer failed to produce sufficient evidence demonstrating his working conditions were so intolerable that he was forced to quit. Fischer alleges he was heckled at work, describing it in the following manner:

> Lehi [a co-worker] would always meet me in the office. If I wasn't to a prayer meeting or I wasn't to a Saturday project, then Lehi would say, where were you? Why weren't you, you know, to this function or why weren't you, you know, to the church's prayer meeting this morning, or why weren't you on their work project.

R., Vol. II at 364. Although such heckling might make the workplace unpleasant, this harassment was no more severe than what the employees in *PVNF* and *Daemi*

experienced. Fischer also alleges that co-workers occasionally left anonymous messages on his car's windshield and in his schedule pickup box. Fischer described the messages in the following manner:

> It would be—it would say something like, you know—usually it would start out I am concerned. I'm concerned that, you know, you're not following, you know, the mandates of our prophet. That's how it usually started out, you know, then it would usually go into be faithful to your prophet, follow the whisperings of the spirit and let the spirit—it was religiously based, very religious overtones.

*Id.* at 368. Although such harassment may make the workplace difficult, the notes were not so distracting that a reasonable person could no longer perform his job. In fact, when Fischer told two supervisors about the notes, he did not ask them to take disciplinary action against the person. Nor did he even ask his supervisors to order the perpetrator to stop. Fischer merely asked the supervisors if they knew who was writing the notes. The fact that Fischer asked to rejoin the company after these incidents further undermines his contention that this alleged harassment was intolerable.

Finally, Fischer alleges that the company (1) refused to hire or interview anyone for employment who is not a member of the FLDS church, and (2) fired Musser because he was not such a member. Evidence that Forestwood engaged in discriminatory acts against other employees or potential employees, however, is not enough to prove constructive discharge. *See PVNF*, 487 F.3d at 805–06; *Daemi*, 931 F.2d at 1385–86. A protest resignation, without more, does not

-14-

establish constructive discharge.  Furthermore, unlike in *Acrey*, Fischer did not produce evidence that his supervisors encouraged him to quit or actively undermined his ability to perform his job.  In fact, his supervisor asked him to reconsider his decision to leave the company.  *See Exum*, 389 F.3d at 1136 (explaining that the fact the employer urged the plaintiff to reconsider his resignation supports the inference that he was not forced to resign); 1-15 *Larson on Employment Discrimination* § 15.08 ("If the employer in fact requested that the employee not quit, this will be helpful to the defense, but is not conclusive.").

* * *

In sum, the district court properly granted Forestwood summary judgment on Fischer's unlawful discharge and retaliation claims because he failed to produce sufficient evidence of actual or constructive discharge.

**C.  Failure to Hire**

Fischer also alleges Forestwood failed to rehire him because he would not rejoin the FLDS church.  Under Title VII, it is unlawful to "fail or refuse to hire . . . any individual . . . because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may survive summary judgment by producing either direct or circumstantial evidence of discrimination.

If the plaintiff only produces circumstantial evidence, it is evaluated under the *McDonnell Douglas* burden-shifting framework.  In an ordinary failure-to-hire

case based on race or sex discrimination, a plaintiff must show the following to establish a prima facie case:

> (1) plaintiff belongs to a protected class; (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications.

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005). An employer can rebut the prima facie case by satisfying the familiar *McDonnell Douglas* burden-shifting framework. In the context of a claim of religious discrimination, we apply a modified version of *McDonnell Douglas*. *See Shapolia*, 992 F.2d at 1038 (applying a modified *McDonnell Douglas* test to a plaintiff's claim that he was unlawfully discharged because he did not share his supervisor's Mormon beliefs).[5]

To establish a prima facie failure-to-hire case in this context, the plaintiff must show the following: (1) the plaintiff applied and was qualified for a job for which the employer was seeking applicants; (2) despite being qualified, the plaintiff was rejected; and (3) some additional evidence to support the inference that the plaintiff was not hired because of a discriminatory motive based upon the

---

[5] The present case is similar to *Shapolia*, 992 F.2d at 1038. First, Fischer alleges he was discriminated against because he did not share his supervisors' religious beliefs. Second, because the discrimination is targeted against non-FLDS members, and non-FLDS members constitute a majority of society, this case resembles reverse discrimination cases. Therefore, for the same reasons we applied a modified *McDonnell Douglas* framework in *Shapolia*, we must do so here.

employee's failure to hold or follow his or her employer's religious beliefs.  Upon such a showing, the plaintiff is entitled to the benefit of the *McDonnell Douglas* burden-shifting scheme and its presumptions.  *Exum*, 389 F.3d at 1134–35.

Alternatively, a plaintiff alleging a failure-to-hire claim may survive summary judgment if he produces sufficient direct evidence of discrimination. Direct evidence would support an inference that religious discrimination played a motivating factor in an employer's decision not to hire the applicant.  *Cf. Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008) (describing direct evidence in the context of a Title VII retaliation claim).  When direct evidence is presented, *McDonnell Douglas*'s burden-shifting scheme is inapplicable.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). In such a case, we ask only whether the plaintiff's direct evidence is sufficient to create a genuine issue of material fact to defeat summary judgment.

In support of his failure-to-hire claim, Fischer proffered evidence of two tape-recorded conversations between himself and Erwin.[6]  Erwin is Fischer's father and, at the time, was also the President and Chairman of the Board of

---

[6] Recording telephone calls is legal in Utah with the consent of at least one party to the conversation.  Utah Code Ann. § 77-23a-4(7)(b) ("A person not acting under color of law may intercept a wire, electronic, or oral communication if that person is a party to the communication or one of the parties to the communication has given prior consent to the interception, unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of state or federal laws.").

Forestwood. Fischer alleges these recordings reveal that Forestwood would only rehire him if he returned to the FLDS church.

The district court refused to consider these recordings on summary judgment, concluding that the conversations were impermissible hearsay. The district court furthermore concluded that even if the conversations were admissible, they were insufficient to establish a prima facie case. We disagree with both conclusions.

*1. Admissibility of telephone conversations*

"[W]e review a district court's evidentiary decisions for abuse of discretion." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1081 (10th Cir. 2006). "In reviewing [such a decision], we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1190 (10th Cir. 2007).

Hearsay evidence is generally inadmissible. Fed. R. Evid. 802. Such evidence "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement is not hearsay, however, if it is an admission of a party-opponent. Fed. R. Evid. 801(d)(2). An admission of a party-opponent is, among other things, a statement "offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the

subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Id.*

The taped conversations constitute admissions of a party-opponent because Erwin was president of Forestwood at the time of the conversations. As president, he was "authorized" by Forestwood "to make a statement concerning" hiring and firing. *See* Fed. R. Evid. 801(d)(2)(C). Likewise, he was acting as an agent for Forestwood and was making statements within the scope of his authority. *See* Fed. R. Evid. 801(d)(2)(D).

The district court nonetheless concluded that the statements were inadmissible hearsay. The court cited two reasons: First, the conversations were between a father and a son. Second, Forestwood does not have an opportunity to cross-examine Erwin because he is deceased.[7]

As to the first explanation, the district court implied that the statements were not admissions of a party opponent because Erwin was speaking in his capacity as a father rather than as the president of Forestwood. Such a conclusion, however, is erroneous. Substantial portions of the taped conversations involved Erwin discussing whether Fischer would be rehired by the company.

_____

[7] The district court also notes that the tape "is, in certain places, not audible." R., Vol. IV at 854. The district court does not explain why this fact would make the entire tape inadmissible hearsay.

-19-

Forestwood nonetheless argues, "[u]nless in fairness the transcripts could *only* be characterized as a conversation between 'parties' . . . the district court was within its discretion in holding that they are inadmissible hearsay." Aple. Br. at 26 (emphasis added). Forestwood offers no legal support for such a claim. Nothing in the rules of evidence excludes otherwise admissible evidence because of a familial relationship, especially in the context of a family-owned business. Likewise, Title VII contains no exception for family-owned businesses or intra-family disputes.

As to the second point, courts have consistently rejected the argument that for an admission by a party opponent to be admissible, the declarant must be available for cross-examination. *See, e.g.*, *Savarese v. Agriss*, 883 F.2d 1194, 1201 (3d Cir. 1989) ("[A] statement by a declarant, deceased at the time of trial, may be admissible under . . . Fed. R. Evid. 801(d)(2)(D)."); *Auto-Owners Ins. Co. v. Jensen*, 667 F.2d 714, 722 (8th Cir. 1981) (explaining that admissions by a party opponent do not need to be subjected to cross-examination in order to be admissible). The reason cross-examination is not required is because

> admissions doctrine amounts to a logical expression of the
> philosophy of the adversary system and is closely connected with the
> personal freedom and responsibility that are part of life in a free
> society: In the case of individual admissions, it seems appropriate to
> point out that parties bear the lion's share of responsibility for
> making or breaking their own cases, and lawsuits are focused
> inquiries into personal rights and social responsibilities. These ideas
> make it reasonable to say that one cannot claim that his own

statement should be excluded because it was not made under oath or subject to cross-examination or in view of the trier of fact.

4 Mueller & Kirkpatrick, *Federal Evidence* § 8:44 (3d ed. 2007) (internal citations omitted); *see also* Fed. R. Evid. 801 advisory committee's note ("Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system. . . . No guarantee of trustworthiness is required in the case of an admission.").

Accordingly, the district court should have considered the tape-recorded conversations between Fischer and his father in determining whether sufficient evidence was presented to survive summary judgment on the failure-to-hire claim.

*2. Sufficiency of evidence*

The district court concluded that even if the recorded tapes were admitted into evidence, Fischer presented insufficient evidence to survive summary judgment. Again, we disagree.

As an initial manner, the district court erred in concluding that Fischer failed to establish a prima facie failure–to–hire case. As explained above, to establish a prima facie case, Fischer must provide sufficient evidence establishing that (1) he applied and was qualified for a job for which Forestwood was seeking applicants; (2) despite being qualified, Forestwood rejected him; and (3) some additional evidence to support the inference that Fischer was not hired because of

a discriminatory motive based upon Fischer's failure to follow the religious beliefs of Forestwood's management.

Fischer satisfied the first element because he sought reinstatement directly from Erwin, the president of the company. Fischer is not barred from pursuing his claim merely because he did not submit a formal application. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). In fact, it is unclear from the record whether Forestwood even accepts formal job applications from non-FLDS members. Fischer also produced sufficient evidence demonstrating he was qualified for a position, based on his prior successful performance with the company. Finally, Fischer demonstrated that a position was available at the company, based on Erwin's repeated statements that the company would be happy to have Fischer return.

It is also undisputed that Fischer satisfied the second element of a prima facie case because the company did not rehire him. Finally, he established the third element of a prima facie case. Fischer testified Erwin was aware that he was not a member of the FLDS church. Furthermore, since at least 1999, the company has failed to hire or interview anyone who was not a member of the FLDS church. The district court therefore erroneously concluded that Fischer failed to establish

a prima facie case at the summary judgment stage. Because the district court concluded Fischer did not establish a prima facie case, it did not evaluate whether Forestwood satisfied its burden of articulating a legitimate rationale in support of its employment decision or whether Fischer demonstrated that the defendant's proffered reasons were a pretext for discrimination. It is unnecessary for us to reach these issues, however, because we conclude Fischer produced sufficient direct evidence to survive summary judgment.

In evaluating direct evidence, we do not apply the *McDonnell Douglas* framework. *See Trans World Airlines*, 469 U.S. at 121 (holding *McDonnell Douglas* is inapplicable when direct evidence is presented). The recordings are direct evidence because no inference is required to reach the conclusion asserted—that Fischer's non-membership in the FLDS church played a motivating factor in Forestwood's decision not to rehire Fischer. *Cf. Fye*, 516 F.3d at 1226 (describing direct evidence in the context of a Title VII retaliation claim). In the phone conversation, when Fischer asked Erwin whether he had a chance to check with other board members about Fischer returning to the company, Erwin said,

> [Erwin]: Yeah, I've had a chance to talk it around a little bit, see what's going— One of the first questions I had was it just for a job or would you like to come back and be part of the people in the group, trying to kind of get back in where we were before or just what is your standing on it, or what's your thinking on it? . . . .
>
> [Erwin]: Drop this suit and let us get back on base and we could go forward again.

Mr. Fischer: Uh-huh.

[Erwin]: We would just be (inaudible) happy to have you here back with us again.

Mr. Fischer: Yeah, But you don't think we could do it just to provide a good honest job and provide those services unless we had the other religion hands on tight or –

[Erwin]: Right. We would like to have everyone supporting the force, you know, be one with the prophet. You know how that was.

R., Vol. IV at 637–38. Later in the conversation, after much discussion of the present lawsuit and the FLDS religion, Fischer again asked whether he could have his job back. Erwin again indicated he would not be rehired unless he rejoined the FLDS church:

Mr. Fischer: Well, do you think there's some chance, though that we could start at least entertaining our relationship here on a business front?

[Erwin]: It's going to have an answer versus where you stand. If you're suing and fighting Uncle Rulen [sic] and wanting to work for his company at the same time, this won't work. . . .

[Erwin]: (Inaudible) Don't let things like that upset you and, you know, you can still come back, you can still turn your life around right now, you haven't lost your career. You can get yourself back into the priesthood.

*Id.* at 662, 667. We conclude that these recordings constitute direct evidence that creates a genuine issue of material fact on the question of whether Forestwood refused to rehire Fischer because he is not a member of the FLDS church.

* * *

-24-

Taken together, we conclude the district court erred in excluding the taped conversations and deciding Fischer lacked sufficient evidence to survive summary judgment on the failure-to-hire claim. On remand, the district court must still determine whether Fischer was seeking to be rehired as an employee of Forestwood for the purposes of Title VII. *See supra* note 1.

### III. Conclusion

We AFFIRM the district court's grant of summary judgment on the unlawful discharge and retaliation claims, and REVERSE and REMAND on the failure-to-hire claim.