**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JACK DEBOER,

        Plaintiff-Appellant,

v.

AMERICAN APPRAISAL
ASSOCIATES, INC.,

        Defendant-Appellee.

No. 07-3279
(D.C. No. 06-CV-02285-JWL)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **PORFILIO**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

Defendant American Appraisal Associates, Inc. prepared a fair market

value-continued use (FMV-CU) appraisal for Brackett, Inc., a Kansas company.

After the appraisal was completed, plaintiff Jack DeBoer guaranteed a loan for

Brackett. Slightly over one year later, Brackett declared bankruptcy.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Subsequently, Mr. DeBoer brought a diversity action against American Appraisal asserting that it made negligent and fraudulent misrepresentations in the appraisal and that he relied on the appraisal in guaranteeing the loan. The district court granted summary judgment in favor of American Appraisal, concluding, as a matter of law, that no rational trier of fact could find that Mr. DeBoer reasonably and justifiably relied on the appraisal. Rejecting Mr. DeBoer's argument that the district court erred in granting summary judgment, we affirm.

American Appraisal is an international appraisal company, which offers services to evaluate real estate and personal and intellectual property. In July 1990, it appraised Brackett, a manufacturer of machines used to bind and create pads for office supplies, through (1) a FMV-CU appraisal, which assumes continued use of assets in a business; (2) an orderly liquidation value (OLV) appraisal, which assumes the assets will be sold; and (3) an insurance appraisal, which establishes the replacement cost of the assets. The FMV-CU appraisal valued Brackett's engineering drawings, its biggest asset, at $1,015,000, and the OLV and insurance appraisals valued the drawings at zero.

In February 2003, Michael Murray, president and owner of Brackett, asked American Appraisal to perform another FMV-CU appraisal because Brackett was seeking financing and because he had been advised he needed to update the 1990 appraisal. Even after American Appraisal informed him that it was unusual to use

a FMV-CU appraisal to obtain bank financing, Mr. Murray asked for that type of appraisal anyway.

American Appraisal performed the FMV-CU appraisal and concluded that the FMV-CU value of Brackett's total assets was $1,345,100. This value was based on the assumptions of continued use of the assets in the business and that earnings would be adequate to justify continued ownership of the assets appraised. The appraisal valued the engineering drawings at $785,000 with a notation of "INFORMATION PER CLIENT," thereby slightly increasing Mr. Murray's projection that their value was $750,000. Although American Appraisal understood that the appraisal would provide a basis for financing, the appraisal report stated that a FMV-CU appraisal "is not commonly accepted by the lending community as appropriate collateral value to support financing arrangements" and that American Appraisal did not endorse using the report for that purpose. Aplt. App. at 40. Also, the report stated that the "fair market value does not represent the amount that might be realized from piecemeal disposition of the assets in the open market or from their use for an alternative purpose." *Id.* at 45; *see also id.* at 41 ("An estimate of fair market value arrived at on the premise of continued use does not represent the amount that might be realized from piecemeal disposition of the assets in the marketplace or from an alternative use of the assets."). Furthermore, the report stated that "[n]o one should rely on [the] report as a substitute for their own due diligence." *Id.* at 62.

-3-

Mr. Murray discussed his financial difficulties with Mr. DeBoer, a businessman and an advisory board member for Brackett, in late 2002 and early 2003 and informed him that Brackett needed a loan. In May 2003, Mr. DeBoer guaranteed a $595,000 bank loan for Brackett. In doing so, he relied on the appraisal report as represented by Mr. Murray, but did not see or read the report. Also, Mr. DeBoer did not independently investigate Brackett's financial condition. He admitted he did not conduct "due diligence the way [he] would in a business that [he] was buying or investing in." *Id.* at 161. Instead, he relied only on Mr. Murray's statements (1) that Brackett had $800,000 of profitable sales booked, but needed cash to manufacture those sales; (2) that American Appraisal valued Brackett at $1.3 million; and (3) that Brackett's parts sales were $80,000 per month. Mr. DeBoer believed that if Bracket "went upside down" it would be worth $1.3 million. *Id.* at 165.

In July 2004, Brackett filed for Chapter 11 bankruptcy. Subsequently, Mr. DeBoer commenced this diversity action against American Appraisal asserting negligent and fraudulent misrepresentation in the appraisal. American Appraisal moved for summary judgment arguing that Mr. DeBoer did not justifiably rely on the appraisal.[1]

---

[1] American Appraisal also argued in its summary judgment motion that it owed no legal duty to Mr. DeBoer. The district court rejected this argument. American Appraisal has not appealed that ruling. *See Hutchinson v. Pfeil*,

(continued...)

The district court granted summary judgment as a matter of law because "no rational trier of fact could find that Mr. DeBoer could have reasonably and justifiably relied on the appraisal" to justify his decision to guarantee Brackett's loan "in light of its various assumptions, limitations, and disclaimers." *Id.* at 333; *see also id.* at 339. Recognizing that Mr. DeBoer indirectly relied on the appraisal by relying on Mr. Murray's statements concerning the appraisal, the court first found that Mr. DeBoer did not rely on the appraisal itself; that Mr. Murray only conveyed to Mr. DeBoer aspects of the appraisal that were favorable to Brackett without informing him of the appraisal's assumptions, limitations, or disclaimers; and that Mr. DeBoer cannot improve his position by avoiding the contents of the appraisal and by relying only on the representations of Mr. Murray. Next, the court pointed to statements in the appraisal that an FMV-CU appraisal is generally not acceptable to support financing arrangements, that American Appraisal did not endorse use of the appraisal for that purpose, and that Brackett's appraised value based on FMV-CU did not represent the amount that might be realized on piecemeal sale of the assets or for alternative use of the assets. Additionally, the court noted that the appraisal was based on the assumption that earnings would be sufficient to justify continued ownership of the

[1](...continued)
208 F.3d 1180, 1186 (10th Cir. 2000) (requiring party to file cross appeal to challenge adverse ruling).

assets appraised, that American Appraisal did not investigate Brackett's earning capacity and instead assumed sufficient prospective earnings, that the value of the engineering drawings were listed as "INFORMATION PER CLIENT," and that the appraisal stated that anyone relying on the report should do their own due diligence. In summary, the court concluded that "the appraisal was so laden with qualifications and disclaimers that no reasonable financier would have accepted it as appropriate to support a $595,000 loan guarantee without conducting any further investigation." *Id.* at 340-41.

Mr. DeBoer appealed. He argues that the district court erred in granting summary judgment because there are genuine issues of material fact whether his reliance on the appraisal was justified and reasonable.

We review the district court's grant of summary judgment de novo. *Fischer v. Forestwood Co.*, No. 06-4121, ___ F.3d ___, 2008 WL 2009866, at *2 (10th Cir. May 12, 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in the non-movant's favor." *Fischer*, 2008 WL 2009866, at *2. "While we view the record in the light most favorable to the

-6-

non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." *Id.* (quotation omitted).

Applying these standards, we have carefully reviewed the parties' briefs, Mr. DeBoer's appendix, the district court's memorandum and order, and the applicable law. We agree with the district court that there are no issues of fact to submit to the jury and the evidence "is so one-sided that [American Appraisal] must prevail as a matter of law." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1179 (10th Cir. 2007) (quotations omitted). Accordingly, we affirm for substantially the same reasons set forth in the district court's memorandum and order filed August 17, 2007. Aplt. App. at 323. That memorandum and order thoroughly and accurately describes the proper legal standards and articulates the reasons for the court's conclusions.

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge