**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ERIC HONEYFIELD,

      Plaintiff-Appellant,

v.

CITY OF GALLUP,

      Defendant-Appellee.

No. 10-2052
(D.C. No. 1:08-CV-01034-MCA-GBW)
(D. New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

---

**I**

Plaintiff-Appellant Eric Honeyfield sued his former employer, Defendant-Appellee City of Gallup (the City), alleging that his employment had been unlawfully terminated in retaliation for his refusal to violate a consent decree under which the City had agreed to certain procedures for its employment practices. The consent decree had settled a prior claim of employment discrimination that had been brought against the City for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Mr. Honeyfield averred in his complaint that his refusal to violate the consent decree

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

constituted opposition to an unlawful, discriminatory practice and that he was, therefore, an "aggrieved person" entitled to sue under Title VII. Thus, the district court's jurisdiction was based on 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

Following discovery, the district court granted the City's motion for summary judgment, holding that Mr. Honeyfield had failed to produce evidence from which a reasonable jury could determine that he had been terminated, rather than having resigned voluntarily. The district court further held that Mr. Honeyfield had failed to produce evidence to show that he had been subject to constructive discharge. In the alternative, the court held that the City had produced a legitimate, nondiscriminatory justification for its action, and that Mr. Honeyfield had failed to produce evidence to show that the City's explanation was a pretext for discriminatory conduct. Mr. Honeyfield appeals. This court is granted jurisdiction by 28 U.S.C. § 1291.[1]

## II

Mr. Honeyfield was employed by the City as city manager, a position he had held since 2003. In March 2007, Harry Mendoza was sworn in as the new mayor. One day after he took office, Mayor Mendoza called Honeyfield and asked whether city council

---

[1]During the course of this appeal, we noted a jurisdictional defect. The district court's "judgment" of February 17, 2010, did not dispose of the City's counterclaim against Mr. Honeyfield, and so was not a final judgment for purposes of section 1291. In response to an order from this court, the parties sought and the district court granted an order under Fed. R. Civ. P. 54(b) certifying the February 17, 2010, order for immediate appeal. Under our precedents, the district court's Rule 54(b) certification has ripened the prematurely filed notice of appeal, and we have jurisdiction to decide the appeal. *See Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 643-46 (10th Cir. 1988) (en banc).

member Bill Nechero could be hired as assistant city manager. No such position existed, but the mayor was contemplating creating the position. Mr. Honeyfield expressed concern about Mr. Nechero's qualifications and also told Mayor Mendoza that a federal court consent decree prohibited the pre-selection of candidates for employment by the City. Mayor Mendoza then got Mr. Nechero on the line for a three-way call. Mr. Honeyfield explained the idea of the position and the necessary qualifications to Mr. Nechero, who then said that he was not interested in the position.

Mr. Honeyfield made a contemporaneous note about the conversation in which he said that he had then offered his resignation to Mayor Mendoza on the condition that he receive six months' severance pay. The mayor said that he would think about it over the weekend. The following Monday, Mayor Mendoza told Mr. Honeyfield that everything was fine.

Soon after, the city council met in executive session to discuss whether to create the position of assistant city manager. The consensus was that there was no need for the position. At least one council member testified in deposition that there was also a lack of funds for the position. Mr. Honeyfield himself thought the idea was dead at that time, and he heard nothing else about it.

About two months later, on Friday, June 8, 2007, Mr. Honeyfield was talking with Mayor Mendoza, and the conversation turned to the fact that a recently hired employee had failed to report for work. When the mayor asked why, Mr. Honeyfield said he would find out for him. Mr. Honeyfield later told Mayor Mendoza that the employee had

decided not to take the job and that the mayor had "Mary Ann Armijo to thank for that." The very mention of the name of Ms. Armijo in connection with city business was upsetting to the mayor, who testified that he began to do a "slow burn" after that. Ms. Armijo was a former city council member. Mayor Mendoza testified that he did not want her to have anything to do with running the city during his term as mayor.

The mayor decided to ask for Mr. Honeyfield's resignation, and he spoke about it with three of the city council members, at least two of whom were supporters of Mr. Honeyfield. Apparently this was on the same day as the mayor's conversations with Mr. Honeyfield. One of these council members, Mr. Butler, testified that Mayor Mendoza told him that he just could not work with Mr. Honeyfield, though he did not offer any reasons. Another council member, Mr. Landavazo, did not recall that the mayor discussed asking for Mr. Honeyfield's resignation, but did recall that the mayor had expressed to him in a general way that he was unhappy with Mr. Honeyfield's performance. The third member, Mr. Azua, said that the mayor told him that Mr. Honeyfield was ignoring his advice and consulting the previous administration.

That same day, Friday June 8, Mr. Butler and Mr. Landavazo called Mr. Honeyfield to tell him that he was probably going to be fired on Monday. (Although as will be discussed, firing Mr. Honeyfield probably would have taken at least two weeks because he could only have been fired by the city council voting in an open meeting, and the council would have had to list the matter as an agenda item publicized in advance.) Mr. Honeyfield knew that he had the support of these two council members, but testified

-4-

that he decided on Sunday, two days after these conversations, to resign.

On Monday, June 11, the mayor requested Mr. Honeyfield's resignation, telling him that he had the votes on the city council to fire him. In response, Mr. Honeyfield negotiated the terms of his severance. He did not try to keep his job. Mr. Honeyfield knew, from his own past experience as city manager of Raton, New Mexico, that he had the right to a public hearing at which he could defend himself. In fact, he had done that twice during his tenure in Raton, and had succeeded in keeping his job the first time.

### III

Mr. Honeyfield's complaint alleged that he had suffered retaliation in violation of Title VII "because he opposed an unlawful, discriminatory practice." More specifically, he alleged that he was terminated because he would not violate the consent decree by hiring Mr. Nechero as assistant city manager without going through the hiring procedures required under the consent decree. The anti-retaliation provision in Title VII prohibits discrimination against an employee because he has opposed a practice that Title VII forbids. Because Mr. Honeyfield had no direct evidence of such prohibited action, the district court applied the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In this proceeding, for his prima facie case Mr. Honeyfield had to show (1) protected opposition; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action.[1]

We need only address the second element - whether Mr. Honeyfield suffered an

---

[1] *See Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009).

adverse employment action. Mr. Honeyfield contends that he submitted sufficient evidence in the district court to support a finding that his employment had actually been terminated, which of course would satisfy the requirement of an adverse employment action.[2] Mr. Honeyfield contends that the mayor had made it clear that he had sufficient votes to fire him and that this sufficed to show actual termination. But our court has held that an actual discharge does not occur "when the employee chooses to resign rather than work under undesirable conditions." *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008).

The evidence here showed that Mr. Honeyfield knew that the mayor could not terminate him unilaterally; that he could only be discharged after a vote by the full council; that such a vote could only be held after notice had been given at a regularly scheduled meeting or a special meeting; that the matter could not be considered by the council at a regularly scheduled meeting until June 26, more than two weeks after Mr. Honeyfield resigned; that there were no special meetings set; that two of the five council members supported him; and that he could insist on a public hearing, at which he could have legal counsel.

We hold that no rational jury could find that Mr. Honeyfield's employment had actually been terminated in these circumstances. To hold otherwise, *i.e.*, to conclude that a jury could find that he had been fired, would necessarily mean that the procedural

---

[2]*See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998). Mr. Honeyfield expressly disclaims any reliance on the theory of constructive discharge. Accordingly, unlike the district court we will not consider that theory.

protection of a due process hearing is meaningless and that the hearing itself could not be more than a sham. This result would be illogical and incorrect; it would be ironic to so hold in this case, because Mr. Honeyfield's own history – of having demanded a hearing and so having preserved his job when he had been city manager of Raton – belies the notion that the procedural protections are a show without substance.

Mr. Honeyfield contends, however, that the test for whether an employee has been discharged is whether a reasonable employee could infer discharge from the statements or conduct of the employer, citing *Pennypower Shopping News, Inc. v. N.L.R.B.*, 726 F.2d 626, 629 (10th Cir. 1984). The issue in *Pennypower*, a labor case, was whether the employer had committed an unfair labor practice by causing employees to think that they had been fired. 726 F.2d at 627-28. We feel that the holding of *Pennypower* does not control the question here.

We recognize, however, that in *Fischer* we did cite and quote *Pennypower* in a Title VII case. 525 F.3d at 980. But even if we were to apply the standard urged by Mr. Honeyfield, it would not lead us to find error in the district court's grant of summary judgment for the City of Gallup. A reasonable employee in Mr. Honeyfield's position would not infer discharge from the mayor's statement. Instead, he would have known, as Mr. Honeyfield clearly knew, that the mayor's desire to be rid of him and the mayor's belief that a majority of the city council would support the mayor were not enough to end his employment, nor did those facts necessarily mean that his employment would soon end. Instead, a reasonable employee would know, as Mr. Honeyfield knew, that there

was a chance for him to keep his job.  He was not actually terminated.[3]

## IV

We find no error in the district court's determination that Mr. Honeyfield's employment was not actually terminated.  For the foregoing reasons, the judgment of the district court is affirmed.

IT IS SO ORDERED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

---

[3]We note again that Mr. Honeyfield expressly waived any reliance on the theory of constructive discharge.  Nothing in this order and judgment addresses the questions that would arise from these circumstances if that theory had been advanced.