FILED
United States Court of Appeals
Tenth Circuit

November 14, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARCUS JEFFREY,

      Plaintiff-Appellant,

v.

CP KELCO U.S., INC.,

      Defendant-Appellee.

No. 13-7005
(D.C. No. 6:11-CV-00425-RAW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

Marcus Jeffrey appeals from the district court's order granting summary judgment in favor of his employer, CP Kelco U.S., Inc. (CP Kelco), on Jeffrey's complaint asserting claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

Jeffrey began his employment at CP Kelco's Okmulgee, Oklahoma plant—then owned by another company—in 1991. Since 1994, he has held the position of Operator I in the fermentation department.

On March 11, 2011, CP Kelco posted a Notice of Job Bid for an Operator I position in its Engineering Stores/Maintenance Department. The notice specified the candidate would have to pass a simple computer test, and should "be able to identify bearings, belts, seals and other mechanical and electrical parts from measurements, use of manufacturers catalogs, and SAP." Aplt. App. at 185. It further stated "[a] person will be expected to be fully trained in this position within 6 months or they will be disqualified from the position." *Id.* at 186.

As part of the selection process, the candidates received an interview and took a written examination relating to the duties associated with the Operator I position. The written examination required them to perform certain computer-related tasks, to define terms associated with the position, and to identify tools and parts lying on a table. *See id.* at 202. Two of the applicants for the position, including the white male applicant who received the position, scored 100 % on the written test. Jeffrey scored 58 %. According to CP Kelco's Human Resources Manager, Tony Young, "Mr. Jeffrey was not offered the job because of his low test score." *Id.* at 86.

Jeffrey is a member of the International Union of Operating Engineers, Local 627, AFL-CIO (Union). The Union has entered into a Collective Bargaining

Agreement (CBA) governing Jeffrey's employment with CB Kelco. The CBA's provision concerning Seniority/Job Bidding specifies "[w]hen ability, efficiency, knowledge of the job and physical fitness *are virtually equal*, employees with the greatest length of service will be given preference in the filling of permanent vacancies." *Id.* at 343-44 (emphasis added).

Jeffrey had the greatest length of service among the applicants for the Operator I position. He asserts it had been CP Kelco's past practice to award the senior bidder the job without conducting an employment test. Believing he should have been awarded the job due to seniority notwithstanding his low test score, on April 10, 2011, he filed a grievance pursuant to the CBA. CP Kelco denied the grievance.

In May 2011, after Jeffrey filed his CBA grievance, a CP Kelco employee witnessed him with a cell phone in the plant, which is prohibited in certain areas of the plant. Jeffrey admits he may in fact have had a cell phone in the plant at the time; but he doesn't "recall" or doesn't "remember" having one. *Id.* at 123. He was not demoted or suspended as a result of this incident; nor did he receive a loss of pay.[1]

On June 16, 2011, Jeffrey filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination and retaliation. He complained about not receiving the Operator I position, and having been "retaliated against for complaining," referring to the cell phone incident. *Id.* at

---

[1]    Jeffrey believes he may have been "written up" for the cell phone incident, but he also believes the write-up was later withdrawn. Aplt. App. at 124-25.

199. According to him, CP Kelco began writing him up for certain "lockout/tagout" violations because of his filing this EEOC discrimination charge.

The lockout/tagout procedures at CP Kelco's plant are designed to ensure equipment at the plant will not turn on accidentally and thereby injure employees. An employee must lock equipment with a key, then place the key in a box. On June 29, 2011, Jeffrey asserts he followed this procedure. The employee who came on duty after him could not find the key in the box, however. The employee committed a safety violation by allegedly placing a lock on the box and working on the machinery even though the key was not in the box. But the employee was not disciplined. Instead, Jeffrey was cited for a safety violation—for failing to place his key in the box and for failing to use proper documentation. He was placed on probation for six months. Jeffrey complains that employees on probation lose their incentive pay; CP Kelco appears to dispute this. *See* Aplt. App. at 398.

On July 28, 2011, Jeffrey was accused of another lockout/tagout violation and received a three-day suspension without pay. The suspension involved his allegedly improper lockout of two seed tanks at the plant. Jeffrey filed a grievance based on the suspension. While investigating his grievance, CP Kelco discovered a white employee had committed a similar violation but had not been disciplined for it. Accordingly, CP Kelco rescinded Jeffrey's suspension and later paid him in full for the three days during which he had been instructed to stay home.

On August 31, 2011, Jeffrey filed another EEOC charge, based on the three-day suspension. Seven months later, in March 2012, he was reprimanded for an incident in February 2012 during which he was observed running through the plant without wearing the necessary personal protective equipment—a hard hat, safety glasses, and ear plugs. He received a warning based on this incident, but was not demoted or suspended and received no loss of pay. He subsequently filed another EEOC charge, pertaining to the warning he received. This suit followed.

## DISCUSSION[2]

### 1. Standard of Review

Our summary-judgment standard of review is well settled:

> We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the non-moving party.

*Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (citations, internal quotation marks, and brackets omitted).

Evidence appropriate to support a party's factual position on summary judgment includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

---

[2] We have only considered those arguments adequately raised and supported in Mr. Jeffrey's opening brief. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

materials." Fed. R. Civ. P. 56(c)(1). Both parties presented such evidence in the form of depositions, official EEOC documents, and other materials. CP Kelco also provided affidavits and Jeffrey presented interrogatory answers. Reference to "evidence" in this order and judgment means these materials included in the summary judgment record on appeal.

### 2. Retaliation Claim

Jeffrey claims to have presented sufficient evidence of pretext to survive summary judgment on his retaliation claim. Because he does not offer direct evidence of retaliation, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under the *McDonnell Douglas*/indirect approach, the plaintiff must first make out a prima facie case of retaliation by showing (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (internal quotation marks and brackets omitted). "If the plaintiff establishes a prima facie case, the employer must then offer a legitimate, nonretaliatory reason for its decision." *Id.* "[O]nce the employer has satisfied this burden of production, the plaintiff must show that the employer's reason is merely a pretext for retaliation." *Id.*

The parties assume the first two *McDonnell-Douglas* factors have been satisfied: Jeffrey has established his prima facie case of retaliation, and CP Kelco asserted a legitimate reason for its actions—it disciplined and suspended Jeffrey because he had committed workplace safety violations. We therefore focus our attention on the third *McDonnell-Douglas* factor: whether Jeffrey presented evidence, sufficient to survive summary judgment, showing CP Kelco's asserted reasons were merely a pretext for retaliation. Proof of pretext "requires a showing that the proffered non-discriminatory reason is unworthy of belief." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (internal quotation marks omitted). Jeffrey "can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [CP Kelco's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [CP Kelco] did not act for the asserted [non-retaliatory] reasons." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009).

To show pretext, Jeffrey first argues his three-day suspension on July 28, 2011, was pretextual because (1) his supervisor suspended him immediately, before conducting his investigation into the alleged safety violation; and (2) in suspending him, the supervisor skipped a step in the company's progressive discipline policy. Jeffrey fails to show the employer's explanation for its decision to suspend him immediately—he had allegedly committed a second violation of safety rules—is

"unworthy of belief." *Picture People*, 684 F.3d at 988. CP Kelco presented uncontested evidence it had "suspended a white Union employee based on an accusation that the employee committed a safety infraction before initiating and completing an investigation" and "[s]uch a practice is not inconsistent with CP Kelco policies." Aplt. App. at 398.

Similarly, Jeffrey fails to show pretext in CP Kelco's alleged failure to adhere to its progressive discipline policy. Under the policy, a first violation results in a verbal warning; a second in a written warning; a third, time off without pay; and a fourth, termination. *Id.* at 370. On June 29, 2011, it issued Jeffrey a "verbal warning" (albeit, one verified in writing). *Id.* On July 28, 2011, CP Kelco suspended him for three days without pay. He claims under the policy, he should have been given a written warning for his second offense, rather than suspension. But as CP Kelco explained, "when a cardinal rule violation occurs, [the company] may immediately suspend the employee rather than issue a verbal [sic] counseling." *Id.* at 375. Jeffrey fails to show this explanation is unworthy of belief.

CP Kelco's uncontested evidence contained instances in which white employees had been disciplined for violating similar safety rules, including a white employee who was suspended for a week without pay for a violation of lockout/tagout procedures. But Jeffrey argues the district court ignored an instance in which CP Kelco failed to discipline an employee who was white and had not filed a charge of discrimination for an allegedly similar safety violation. After learning

this white employee had not been disciplined for what it believed to be his *first* violation, CP Kelco withdrew Jeffrey's discipline and eventually paid Jeffrey for the three-day suspension for his *second* violation. The number of violations involved was not the same. Viewing the incidents as a whole, we cannot say Jeffrey has shown he was treated differently than a similarly-situated white employee with regard to his suspension. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) ("[A] plaintiff may . . . show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness.").[3] Therefore, Jeffrey fails to demonstrate pretext.[4]

---

[3] Jeffrey asserts the white employee "committed *two* workplace safety violations without being issued any discipline." Aplt. Br. at 12 (emphasis added). *See also* Aplt. App. at 299 (Jeffrey deposition). His contention relies only on his hearsay account of what the employee allegedly told him; Jeffrey does not provide admissible evidence the white employee committed two violations comparable to his own. CP Kelco provided admissible evidence it found only *one* comparable violation. *See id.* at 374 (answer to interrogatory stating "[CP Kelco] withdrew the discipline for the workplace safety violation once it conducted a further investigation and learned that another employee was not disciplined for *a similar violation*." (emphasis added)).

[4] Although his current difficulties with CP Kelco date to March 2011, Jeffrey also invokes a series of prior incidents in which CP Kelco allegedly discriminated and retaliated against him in 2009. After mediation, Jeffrey and CP Kelco settled his 2009 discrimination claims. But now he complains of disciplinary write-ups he received soon after the 2009 settlement. He says these write-ups, together with the timing of the alleged retaliatory discipline in 2011, illustrate CP Kelco's pattern of retaliating against him whenever he files charges of discrimination. Jeffrey does not describe the alleged 2009 discipline in any detail, or explain why any of the reasons given for the discipline he received in 2009 were unworthy of belief. He relies on temporal proximity alone to establish relevance—a questionable argument. *See Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) ("[C]lose temporal

(continued)

- 9 -

### 3. Failure-to-Promote Claim

Finally, Jeffrey challenges CP Kelco's decision not to promote him to the Operator I position in its Engineering Stores/Maintenance Department. We follow the *McDonnell-Douglas* framework for this claim as well. *See, e.g., Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1134 (10th Cir. 2004). Because the parties focus their arguments on pretext, we will proceed to the third step. He alleges the reasons for not promoting him are pretextual because "CP Kelco's pattern and practice has been to award the senior bidder the job without an interview or employment test," because "to Jeffrey's knowledge, this is the only area of the plant that requires an employment test," and because the successful candidate would receive on-the-job training, making an employment test unnecessary. Aplt. Opening Br. at 38-39.

Jeffrey fails to substantiate his "pattern and practice" argument with citations to admissible evidence. For its part, CP Kelco's evidence revealed its promotion practice: it had not looked merely to seniority when making job selections for this position in the past, but had also relied on interviews and test results. Aplt. App. at 397. In addition, absent more, the fact *other* areas of the plant did not require employment testing is insufficient to show pretext.

---

proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment"). Assuming these prior alleged retaliatory incidents, which occurred years before the incidents at issue in this case, are even relevant, Jeffrey makes only a cursory argument they show pretext. *See* Aplt. Opening Br. at 26. We decline to address his underdeveloped argument.

Finally, the fact on-the-job training would be provided does not in itself show the employment test was "not necessary." Aplt. Opening Br. at 39. Jeffrey's argument on this point is conclusory. He fails to show CP Kelco gave the test to measure knowledge a successful candidate would be expected to gain on the job, as opposed to the candidate's general aptitude for the position. Absent such a showing, Jeffrey's own opinions about the need for the test do not give rise to a material fact dispute. *Cf. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999) ("[A]n employee's own opinions about his . . . qualifications [do not] give rise to a material factual dispute." (internal quotation marks omitted)).[5]

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

---

[5] In the fact section of his brief, Jeffrey claims to have become "aware that the other two applicants had advance access to the materials on the test." Aplt. Opening Br. at 5. He does not develop a pretext-based argument concerning this point in the argument section of his brief. In any event, he cites only his deposition testimony, in which he described his knowledge of such assistance as being based on "just hearsay," and failed to provide any details other than a rumor he had heard. Aplt. App. at 315. CP Kelco presented uncontested evidence it investigated the rumor and found no basis for a claim that "the bidders saw the test or its contents before the tests were administered." *Id.* at 397, ¶ 4.